UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TECNOMATIC, S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:11-cv-991-JMS-TAB |
| | ) | |
| REMY INC., HANSON SYSTEMS, LLC | ) | |
| d/b/a EAGLE TECHNOLOGIES | ) | |
| GROUP, ODAWARA AUTOMATION, | ) | |
| INC., REMY INTERNATIONAL, INC., | ) | |
| DELCO REMY MEXICO, S.R.L. DE | ) | |
| C.V., and REMY COMPONENTES S. | ) | |
| DE R.L. DE C.V., | ) | |
| | ) | |
| Defendants. | ) | |

REMY DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR RENEWED MOTION TO DISMISS[1]

Tecnomatic, S.p.A. ("Tecnomatic") filed a sprawling 15-count complaint containing allegations that Remy Inc., Remy International Inc., Delco Remy Mexico, S.R.L. de C.V., and Remy Componentes S. de R.L. de C.V. (collectively "Remy" or "the Remy Defendants") misused some unspecified technology supposedly in violation of a 2003 Mutual Confidentiality Agreement ("CA").   Tecnomatic seeks to impose large-scale, expensive litigation on the defendants by means of a non-specific shotgun complaint that does not even include the parties' controlling contracts.

Remy Inc. has for decades manufactured hybrid electric motors including components called "stators." Tecnomatic makes and sells manufacturing machinery to companies like Remy. The gravamen of Tecnomatic's Complaint is that the Remy Defendants stole ill-defined

---

[1] The Remy Defendants filed a Rule 12(b)(2), (3), and (6) motion to dismiss in the Northern District of Illinois and, in the alternative, a motion to transfer the case to the Southern District of Indiana.  The Court elected to transfer the case and did not address the merits of Remy's 12(b) motion.  Thus, Remy renews its Rule 12(b)(6) motion here.

"technology" from Tecnomatic. Though Tecnomatic claims it leased or sold equipment to Remy (Compl. ¶¶ 112-14; Ex. E), it nowhere mentions the terms of the lease or purchase documents, or attaches them to the Complaint. This may explain some of the Complaint's vagueness, as the absent transactional documents would logically include terms and conditions directly bearing on Tecnomatic's claims.

Instead, Tecnomatic bases its claim of theft of confidential information upon the CA, hauling Remy into court without specifying the "confidential" information at issue or the circumstances of its transfer (but making 33 allegations on "information and belief"), and without placing the parties' subsequent controlling contracts before the Court. Tecnomatic seeks recovery on nonspecific and non-actionable allegations that Remy misrepresented its intentions about future business and uses of Remy's own equipment.

Tecnomatic's inability to identify both the specific technology allegedly stolen and the specific use Remy made of it are fatal to this Complaint. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Tecnomatic's complaint should be dismissed because it fails to state a plausible claim for relief.

## ARGUMENT

### I.      Legal standard

A Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted is evaluated using a two-pronged approach. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-52 (2009). First, the Court must identify the "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Second, the Court goes on to determine whether the remaining "well-pleaded factual allegations" "plausibly give rise to an entitlement to relief." *Id.* The court sits not in a vacuum but "draw[s] on its judicial experience and common sense." *Id.* A complaint that has alleged—but "has not 'show[n]'—'that

the pleader is entitled to relief'" is insufficient. *Id.* (citing Fed. R. Civ. P. 8(a)) (alteration in original).

Disregarding "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *see id.*, Tecnomatic's Complaint alleges that: (1) the parties considered a joint venture and entered the 2003 Confidentiality Agreement; (2) the parties extended the CA through May 2007 but did not ultimately enter a joint venture; and (3) Remy manufactured electric motors using equipment leased or purchased from Tecnomatic and then paid other manufacturers to "reverse engineer" some of that equipment.

These allegations suggest no plausible right to relief.

## II.    Tecnomatic's Breach Of Contract Allegations—Counts I and II—Fail To State A Claim For Relief.

In Count I of its 15-count Complaint, Tecnomatic caps a sprawling 191 paragraphs of common allegations with the bare recitals that: (1) "One or more of the Remy Defendants has obligations under the 2003 Mutual Confidentiality Agreement;" and (2) "One or more of the Remy Defendants has breached those obligations in one or more ways set forth above." Compl. ¶¶ 193-94. Count II repeats these assertions for the CA Extension.

A complaint must give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 553 (2007). Where, as here, myriad allegations precede multiple claims, a complaint must identify the purported links between them. *See Flayter v. Wisc. Dept. of Corr.*, 16 F. App'x. 507, 509 (7th Cir. 2001) ("A prolix and confusing complaint should be dismissed" as making responsive pleading and orderly litigation difficult); *Andela v. Univ. of Miami*, 692 F.Supp.2d 1356, 1370 (S.D. Fla. 2010) (advising dismissal of "shotgun complaints" with numerous counts incorporating prior, irrelevant material).

Tecnomatic's breach of contract claims fail even upon study of the many common allegations of the Complaint. To properly allege breach of this contract—a Mutual Confidentiality Agreement relating to information exchanged in contemplation of a potential joint venture—the Complaint must plead facts suggesting that Remy treated contractually protected information in contractually prohibited ways. *See Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 874–75 (7th Cir. 1995). It does not.

As detailed below, Tecnomatic's Complaint addresses four categories of information: (1) unspecified "confidential" and/or "proprietary" information; (2) knowledge about Tecnomatic's own allegedly advanced knowledge; (3) an undefined stator winding "Technology"; and (4) leased and/or purchased equipment, together with written materials relating to its operation. Yet nowhere does the Complaint place information simultaneously *inside* the protection of the CA, and *outside* its authorized uses. Thus it fails to nudge any theory that Remy breached the CA "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 546. Counts I and II should be dismissed.

### A.   Unspecified confidential and proprietary information

Tecnomatic's Complaint repeatedly refers to "confidential" and/or "proprietary" information without saying what that information is. For example, Tecnomatic alleges that:

- "during the term of the Agreement and the Extension Confidentiality Agreement, [Remy, on information and belief,] modified Remy internal drawings relating to stator products *to incorporate confidential information and proprietary information of Tecnomatic* into Remy Defendants drawings." Compl. ¶ 105 (emphasis added).

- "[f]rom August 2004 to May 2007, *confidential information*, by oral or written and through electronic information and through observation, was provided to one or more of the Remy Defendants and Remy employees, including Kevin Young, Mark Stephenson, JJ Shives, Richard Van Sickle, Jim Spellman." Compl. ¶ 84 (emphasis added).

4

Under Rule 8(a), this is insufficient. The Court does not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949-50. Such allegations contain nothing else; unmoored to any factual description, Tecnomatic's multiple allegations about unspecified "confidential" and/or "proprietary" information fail to state or support any claim for relief. *Twombly*, 550 U.S. at 545 (requiring sufficient detail to give fair notice of what the "claim is and the grounds upon which it rests.").

### B.   Alleged "information about Tecnomatic's information"

Tecnomatic further alleges that Remy "gained access to information indicating Tecnomatic had valuable technological know-how on complex stators and the manufacture of same" as well as certain "engineering expertise." Compl. ¶¶ 67, 89. The Complaint does not say, however, how Remy purportedly misused this "information about information." And what Tecnomatic does say—*i.e.,* that it is "a world recognized leader in the design, manufacture, and implementation of stators and stator windings [and] production lines"—places this "knowledge about knowledge" squarely in the public domain and thus outside the protection of the CA. *See* Compl. Ex. C. (excepting information lawfully "available to the receiving party on a non-confidential basis prior to the disclosure").

### C.   Allegations about the "Technology"

The Complaint alleges that Remy misused "proprietary stator technology and stator winding technology, as well as technology related to the manufacture of the same ... (the 'Technology')." Compl. ¶ 2. Thus, while identifying a subject-matter—*i.e.*, stators or even stator winding—Tecnomatic does not identify the Technology itself. *See e.g.*, Compl. ¶¶ 2, 29. Contrary to the demands of fair notice, Tecnomatic thus leaves Remy to guess what specific method, technique, capability, process or other sort of information it has allegedly misused.

Tecnomatic's claims that Remy holds out the "Technology" as Remy's own "proprietary High Voltage Hairpin ("HVH") stator winding technology" (Compl. ¶ 3), and that Remy asserts ownership of "proprietary" stator technology (Compl. ¶ 2), do not cure this defect. They fail to identify the particular aspect of Remy's technology that Tecnomatic lays claim to—whether it includes the shape of stator wires or anything else.[2]

Finally, Tecnomatic's factual allegations do not identify how or when Remy acquired this ill-defined Technology. Significantly, Tecnomatic pleads no "furnishing" of a specific technological innovation, or even the undefined "Technology," during the term of the CA.

Without the what, the when, and the how of Remy's purported theft, allegations about vague "Technology" cannot satisfy the demands of Rule 8. *See Iqbal*, 129 S.Ct. at 1949 (where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'") (citations omitted).

### D.      Allegations about purchased equipment and operating materials

While more specific, Tecnomatic's contradictory allegations about leased/purchased equipment are no less deficient. Tecnomatic alleges variously that Remy: (1) "purchased" Tecnomatic equipment and received "technical drawings, manuals, and other documents …" (Compl. Ex. E); (2) leased equipment under a "Capital Lease Agreement," receiving "technical drawings" upon request (Compl. ¶¶ 112,114,119,171,172); and (3) "misused" equipment, related drawings, and unspecified "proprietary and confidential information" by sharing them with third parties who duplicated the equipment (Compl. ¶¶ 161–62). In other words, Tecnomatic alleges that Remy breached the Confidentiality Agreement by "misusing" manufacturing equipment it bought or leased from Tecnomatic.

---

[2] By contrast, the Complaint refers to far more specific capabilities of stator manufacturing <u>equipment</u> that Tecnomatic allegedly acquired before Remy—*e.g.,* the ability to bend "large copper wire into a hairpin "U" shape," to "insert wires into a 60-slot cylindrical steel base." Compl. ¶ 23-35.

This theory fails as a matter of law. First, by express purpose, the CA allows the parties to "furnish[ ] certain Confidential Information to one another *in connection with a possible joint venture between [them]*." Compl. Ex. C at 1 (emphasis added). Thus, it protects information exchanged to consider and evaluate a joint venture, not equipment bought or leased by separate contract. Construing the CA more broadly leads to an impermissibly absurd result. The CA requires a party receiving confidential information to return or destroy that information at the end of the CA term—a duty that cannot reasonably apply to purchased or leased equipment. *Beanstalk Group, Inc. v. AM General Corp*, 283 F.3d 856, 859–60 (7th Cir. 2002) (rejecting literal contract interpretation if it "would produce absurd results").

Second, requiring information regarding leased or purchased equipment to be used solely to evaluate a never-consummated joint venture would make no sense.  The purchased or long-term leased equipment was obviously used for production. Forcing it into the coverage of a CA (1) requiring use of information only for evaluating a proposed joint venture, and (2) requiring return of information if no joint venture were formed, simply makes no sense.  This is yet another reason the Court needs to see the complete purchase and lease documentation in order to judge this Complaint.[3]

Read as a whole, the CA does not reach and cannot protect leased and purchased equipment or manuals and written materials related to its operation. *Beanstalk Group, Inc*, 283 F.3d at 860 ("[A] contract must be interpreted as a whole."). Absent restrictions in the lease contracts or purchase orders themselves—documents Tecnomatic refers to in its Complaint but does not attach—Tecnomatic describes no plausible breach of contractual duties. *See generally*

---

[3] Interestingly, when Tecnomatic's counsel wrote to Remy on March 27, 2007, he referred to "technical drawings [*provided] for the operation and maintenance of equipment **purchased** from Tecnomatic*." Compl. Ex. E (emphasis added). And when Tecnomatic's counsel asserted interests in certain "confidential" documents associated with the equipment, he warned of trade secret misappropriation and patent infringement but failed even to mention the CA. *Id.*

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007) (noting that a "complaint should contain information that one can provide and that is clearly important") (emphasis in original). Accordingly, Tecnomatic's breach of contract claim must be dismissed. *See Palda*, 47 F.3d at 876 (finding dismissal justified where unambiguous terms of attached contract did not support claim for relief); *Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009) (finding allegations deficient where alleged conduct was "just as consistent with lawful conduct as ... wrongdoing").

## III. Tecnomatic's State Law Trade Secret Claims—Count VI— Fail As A Matter Of Law.

### A. Indiana law applies to state law statutory and tort claims.

Though Tecnomatic has pled its state law claims under the law of Illinois, it alleges a single and insignificant Illinois contact with this dispute: *i.e.*, that one defendant *may,* on "information and belief," have an office and do business in Chicago. Compl. ¶ 11. On these facts, imposition of Illinois law would violate the constitution. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 639-40 (1981) (noting that "if a state has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional.").

On the other hand, Remy Inc. is based in Indiana. Compl. ¶¶ 13–16. The parties agreed that the CA—the contract Tecnomatic places at the heart of this dispute—would be governed by the law of Indiana. Compl. Ex. C. And the core behavior alleged occurred in or was directed from Indiana. *See, e.g.*, Compl. ¶¶ 47-52, 105, 108-11, 130-32. These significant contacts give Indiana a superior interest in enforcing its law. *Morris B. Chapman & Assoc., Ltd.*, 716 N.E.2d at 838.

### B.    Tecnomatic fails to state a claim for trade secret misappropriation.

Applying Indiana law, Tecnomatic's misappropriation of trade secrets claim must be dismissed. Tecnomatic alleges without factual elaboration that Remy acquired "trade secrets" by "improper means" and "used or disclosed" them without consent. Compl. ¶¶ 234-36. But as *Twombly* makes clear, such "threadbare recitals" do not supply "fair notice of what the … claim is and the grounds upon which it rests …." *Twombly*, 127 S.Ct. at 1964.

Nor is factual support for this claim hiding in plain sight among the Complaint's more than 170 paragraphs of common allegations.

### 1.    Allegations About "Confidential/Proprietary" Information and "Technology" Plead No "Trade Secret."

The Indiana Uniform Trade Secrets Act (IUTSA) defines a trade secret as deriving economic value from not being known or readily ascertainable. Ind. Code § 24-2-3-2(a). But allegations about unspecified "confidential" and "proprietary" information or the "Technology" do not even identify what that information is, much less why it has value or cannot be readily discovered. Neither does any allegation describe "efforts that are reasonable under the circumstances to maintain [the] secrecy" of this information—a further condition of protection under the IUTSA. Ind. Code § 24-2-3-2(b).[4]

### 2.    Allegations About "Confidential/Proprietary" Information and "Technology" Suggest No Misappropriation.

Tecnomatic also fails to describe statutory "misappropriation" of alleged confidential/proprietary information or the "Technology." Under the IUTSA, misappropriation requires (in relevant part) the unconsented-to use or disclosure of a trade secret by one who:

---

[4] Rather, Tecnomatic resorts to formulaic but non-specific recitals, alleging that "Tecnomatic keeps its proprietary information confidential and takes all necessary steps to maintain its confidentiality" (Compl. ¶ 31), and has invested much time, money and effort in identifying and developing its" proprietary technology and information." Compl. ¶¶ 31-32.

(1) "used improper means to acquire knowledge of the trade secret;" or (2) knew or had reason to know he acquired it "under circumstances giving rise to a duty to maintain its secrecy or limit its use." Ind. Code § 24-2-3-2.. But Tecnomatic simply does not allege the particulars of when or how Remy acquired the "Technology." *See* discussion at page 5-6 above. And as legal conclusions, bare allegations that Remy "misappropriated" or "wrongfully obtained" the Technology are not entitled to any assumption of truth. *Iqbal*, 127 S.Ct. at 1950.

### 3.      Allegations About Equipment Plead No Trade Secret.

Tecnomatic's allegations about purchased/leased equipment and operating materials—the only remaining category of information potentially related to trade secrets[5]—fall equally short of *Iqbal* "plausibility." As a threshold matter, they do not adequately plead any "trade secret." Offering virtually no description of the equipment and operating materials at issue, Tecnomatic has not specified what characteristic, if any, qualifies them for statutory protection. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (stating plaintiff must assert "concrete" trade secrets rather than "point to broad areas of technology"); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002) (rejecting 43-page description of methods and processes underlying software features as not specific enough where trade secrets were not separated from "other information").

Indeed, Tecnomatic pleads no fact suggesting that any particular pattern, configuration, design, capability or anything else derives economic value from not being known or readily ascertainable. *IDX Sys. Corp.*, 285 F.3d at 584. Further, Tecnomatic describes no reasonable efforts to keep its stator manufacturing equipment and operating materials secret. *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 759 N.E.2d 239, 246 (Ind. Ct. App. 2001) ("By definition,

---

[5] The final category of information, Remy's alleged knowledge about Tecnomatic's knowledge, bears no apparent relation to trade secrets as defined by Indiana law.

information is a trade secret only if it is the subject of reasonable efforts to maintain its secrecy."). In fact, precluding any such inference, Tecnomatic sold and leased its stator manufacturing equipment to Remy, voluntarily provided operating materials to Remy, and warned of undefined "trade secrets" in stator manufacturing equipment and operating materials only *after* these unrestricted disclosures. Compl. Ex. E.

### 4. Allegations About Equipment Suggest No Misappropriation.

Even if Tecnomatic had sufficiently pled that equipment information included "trade secrets," the Complaint nevertheless still fails to plead "misappropriation." Trade secret law "offer[s no] protection against discovery by … accidental disclosure, or by so-called reverse engineering, that is by starting with the known product and working backward to divine the process which aided in its development or manufacture." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974); *see also U.S. Land Serv. Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 68 n.4 (Ind. Ct. App. 2005). Thus, Remy would have remained free to reverse-engineer the equipment it bought or leased from Tecnomatic, and to refer to voluntarily-disclosed operating materials while doing so. Nor, finally, could Tecnomatic's allegations about the CA transform this lawful conduct into something else. Equipment and operational materials supplied under independent contracts fall unambiguously outside its protections. And even if ambiguous, the CA would give Remy no "reason to *know*"—as required by the IUTSA—that it could not assert basic proprietary or even possessory rights in purchased (or leased) equipment.

Finally, Tecnomatic pleads no fact suggesting Remy did know, or that Tecnomatic itself deemed, that the equipment/operating materials were contractually protected. To the contrary, the Complaint shows that Tecnomatic's counsel complained about potential misuse of purchased equipment and operating materials without even referencing the CA between the parties. *See* Compl. Ex. E.

Tecnomatic, in short, makes conclusory allegations about unlawful conduct and specific allegations of lawful reverse-engineering. Such claims cannot withstand a Rule 12(b)(6) motion.

### C.   Tecnomatic's Fraud Claim—Count IV—Fails To Comply With Rules 8(a) And 9(b).

Reciting the elements of fraud by rote—*i.e.,* that "one or more Remy defendants made one or more false statements of material fact," with knowledge or reckless ignorance of their falsity on which Tecnomatic justifiably relied to its detriment—Count IV of Tecnomatic's Complaint repeats the deficiencies of previous claims. *Iqbal*, 129 U.S. at 1949 (requiring more than a "formulaic recitation" of elements). Nor do the preceding 191 paragraphs of allegations cure these deficiencies. Review of these paragraphs reveals only three of the false factual statements apparently alluded to in Count IV, i.e.: (1) that Remy "expressed willingness to enter a possible joint venture" when proposing the CA in 2003, and extending it in August of 2004, despite ("on information and belief") lacking any intention to do so, Compl. ¶¶ 45-50,71,73; (2) that Remy "continued to make false and misleading representations to Tecnomatic [around January 2007] in order to induce Tecnomatic to transfer its proprietary knowledge to [Remy]," Compl. ¶ 135; and (3) that Remy's Associate General Counsel had written "that he had obtained assurances from Remy employees involved with the project that 'Remy has no intention of replicating the Tecnomatic equipment or infringing upon any Tecnomatic intellectual property,'" Compl. ¶ 152, Ex. F. None of these suggests a plausible right to relief.

First, vague claims that one or more Remy defendants falsely represented that Remy "was interested in a possible joint venture" in 2003 and August 2004 lack the requisite particularity. Rule 9(b) requires the "who, what, when, where, and how"—the "first paragraph of any newspaper story"—not merely an unattributed assertion of corporate intent. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (explaining rule 9(b) pleading requirements).

Furthermore, the rule does not permit Tecnomatic to make this claim on "information and belief" as Tecnomatic does 33 times in the Complaint at issue here. *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 683 (7th Cir. 1992) ("a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief.").[6] *See, e.g.*, *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 993 (7th Cir. 1991) (affirming dismissal of RICO claim where complaint did not give content, time, place, or parties of/to alleged misrepresentations).

Moreover, allegations that Remy denied any intention to replicate Tecnomatic equipment (or "infringe" intellectual property) or "expressed willingness to enter a possible joint venture" relate expressly to *future* conduct, and cannot qualify as "misrepresentations" for purposes of common law fraud. *Heyser v. Noble Roman's, Inc*, 933 N.E.2d 16, 19 (Ind. Ct. App. 2010) ("Actual fraud may not be predicated upon representations of future conduct."). Nor does it matter that Tecnomatic has conjugated its "deceptions" in the present tense, as a matter of intent. Indiana courts reject any distinction between an unfulfilled promise and a knowingly false one. *Mudd v. Ford Motor Co.*, 178 F. App'x 545, 547 (7th Cir. 2006) ("In some jurisdictions, a statement of a present intention or state of mind will support a claim of actual fraud[, b]ut Indiana has explicitly rejected that rule." (citing *Peoples Trust Bank v. Braun*, 443 N.E.2d 875, 877-79 (Ind. Ct. App. 1983)).

Neither does the Complaint adequately allege detrimental reliance. *See generally First Nat'l Bank of New Castle v. Acra*, 462 N.E.2d 1345, 1348 (Ind. Ct. App. 1984). First, entry into the CA in reliance on the hope of a future joint venture (Compl. ¶¶ 52, 73–74) reflects no

---

[6] Rather, Tecnomatic must plead facts making Remy's intentions *more* than equally consistent with lawful intent under Rule 9(b)—a burden it did not meet. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443, 446 (7th Cir. 2011)

detriment to Tecnomatic:  the CA *increased* Tecnomatic's rights in its confidential information, rather than impaired them.[7] Second, transfer of (unspecified) proprietary knowledge to Remy to evaluate a joint venture was no detriment—it was protected by the CA, any breach of which would create liability in contract, not tort. *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010) (economic loss of contracting party should be determined by commercial, rather than tort, law). Third, Tecnomatic asserts that Remy "misrepresented" its employees' intentions with respect to duplicating purchased equipment. But Remy allegedly did so *after* Tecnomatic had already supplied the equipment.

Tecnomatic's fraud allegations, in sum, amount to little more than conclusory assertions about future intent—and even those suggest no proximately-caused injury. Tecnomatic's Count IV should be dismissed.

## IV.     Tecnomatic States No Claim For Constructive Fraud—Count V.

For its "constructive fraud" claim, Tecnomatic alleges that: "One or more of the Remy Defendants owed Tecnomatic a duty due to one or more of the Remy Defendants' relationship with Tecnomatic," and "violated that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak existed." Compl. ¶¶ 224–25. These formulaic recitations do not disclose the factual basis of any cause of action. Nor do Tecnomatic's common allegations fill the gap.

First, Tecnomatic pleads no factual basis for the foundation of any constructive fraud claim—a special relationship. Unlike actual fraud, "[c]onstructive fraud arises by operation of law when one party violates *a duty existing by virtue of his relationship with another party* and

---

[7] Further, the CA expressly allowed Remy to reject any proposed joint venture "for any reason whatsoever, in its sole discretion." Compl. Ex. C. Thus, Tecnomatic could not reasonably rely on the possibility of a joint venture to enter a contract eliminating Remy's duty to enter one. Moreover, the CA itself precludes liability for any "joint venture" representations made in August 2004. *Id.*

gains an unconscionable advantage as a result." *A.I. Credit Corp. v. Legion Ins. Co*., 265 F.3d 630, 635 (7th Cir. 2001) (emphasis added). Indiana courts recognize constructive fraud only in the context of a fiduciary or confidential relationship—relationships premised on one party's "position of inequality, dependence, weakness, or lack of knowledge," *Nicoll v. Comm. State. Bank*, 529 N.E.2d 386, 389 (Ind. Ct. App. 1988)—or, in other limited cases of unequal knowledge as between seller and buyer. *See Mudd*, 178 F. App'x at 547. Tecnomatic, by contrast, has pled arms-length transactions that preclude a fiduciary duty. *See Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994) (noting "arms length negotiations" resulting in contract cannot support fiduciary duty); *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) ("[P]arties may not rely on a contractual relationship to create a duty that, if breached, would form the basis of a constructive fraud claim. Inasmuch as the only possible basis for [the defendant's] duty to the [plaintiffs] is the Contract, we can only conclude that the [plaintiffs] have failed, as a matter of law, to establish that they are entitled to relief on their constructive fraud claim.") (internal citation omitted).

Nor does any allegation relating to leased or purchased equipment supply the predicate duty. Even between sellers and buyers, the requisite duty arises from the seller's superior knowledge over the buyer. *Mullen*, 643 N.E.2d at 401. Yet here, Tecnomatic is the seller, and has alleged its own superior knowledge in the stator market. *See* Compl. ¶ 10 ("Tecnomatic is a world recognized leader in the design, manufacture, and implementation of stators and stator windings used in electric motors ...."). Remy's alleged knowledge, by contrast, extends only to its own contractual intentions—an insufficient basis for a special duty. *Allison*, 883 N.E.2d at 123.

The Complaint also fails to adequately plead the remaining elements of constructive fraud. *See generally Mudd*, 178 F. App'x at 547 (additional elements include deceptive material representation or omission, detrimental reliance, and injury that harms the plaintiff while giving the defendant an unfair advantage). Tecnomatic's allegations that Remy misrepresented its intentions about a "possible" joint venture or reverse-engineering equipment it purchased do not plausibly suggest detrimental reliance, injury, or even unfair advantage to Remy. *See* pages 12-13. And its allegations about "omissions" suggest even less. Tecnomatic first contends that unspecified Remy defendants decided secretly to "cut Tecnomatic out" of the potential joint venture. Compl. ¶¶ 99-100, 119, 122-23. But Tecnomatic cannot square this "omission" with other allegations that Remy *never* seriously considered a joint venture, and that Remy purchased its equipment until at least September 2008. Compl. ¶ 172 (alleging that Remy revoked purchase orders in September 2008). Moreover, the CA expressly bars "any claims whatsoever … arising out of or relating to" the proposed joint venture. Compl. Ex C. Tecnomatic further contends that Remy "began to systematically request Tecnomatic drawings and the transfer of Tecnomatic knowledge" in the first quarter of 2007 without disclosing its intent to duplicate the equipment. Compl. ¶ 159. But the Complaint neither identifies these drawings nor alleges what, if anything, Tecnomatic supplied in response.

Count V parrots the elements of constructive fraud without pleading facts to support them. It should be dismissed.

## V. Tecnomatic's Allegations Of Breach Of Fiduciary Duty—Count VII—And Negligent Misrepresentation—Count III—State No Claim For Relief.

Neither the Complaint's common allegations nor its skeletal breach of fiduciary duty and negligent misrepresentation counts identify factual grounds for those claims. Indiana law will not predicate a fiduciary relationship on arms-length, contractual negotiations. *Mullen,* 643 N.E.2d at

401;[8] s*ee, e.g.*, Compl. ¶ 112, Ex. E; *id.* ¶¶ 44, 47, 52. Nor, in any case, has Tecnomatic alleged any fact suggesting the kind of inequality, dependence, weakness, or lack of knowledge that could justify a special relationship. *See, e.g.*, *Peoples Trust Bank v. Braun*, 443 N.E.2d 875, 878-79 (Ind. Ct. App. 1983) (noting requirements of confidential relationship). Rather, the *only* purported asymmetry favoring Remy is knowledge of its own contractual intentions—knowledge that cannot transform an ordinary commercial relationship into something else.

Tecnomatic's allegations fail equally to plead "negligent misrepresentation." Though Indiana has occasionally recognized this purely economic tort outside the context of employer-employee relations, it has done so only in special circumstances, as where a defendant is paid for an expert opinion or guarantee. *See, e.g.*, *U.S. Bank, N.A v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748 (Ind. 2010); *see also id.*, citing Restatement (2d) of Torts § 552(1) (defining tort as arising when "one who, in the course of his … profession … supplies false information *for the guidance of others* in their business transactions," and the professional "fails to exercise reasonable care or competence in obtaining or communicating the information"). Tecnomatic, however, asserts that Remy manufactures electric motors, not professional opinions. And Tecnomatic seeks to hold Remy liable for purported misrepresentations of its own contractual intentions, not expert advice.

Further, negligent misrepresentation would also require a plaintiff to prove a specific *mis*communication of information, justifiable reliance on that communication, and harm. *Trytko v. Hubbell, Inc.* 28 F.3d 715, 720 (7th Cir. 1994). Yet for the same reasons Tecnomatic fails to meet this burden in pleading other fraud claims, it does not support this narrower tort.

---

[8] *See also Comfax v. North Am. Van Lines, Inc.*, 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992) (refusing to predicate fiduciary relationship on arms length, contractual arrangement).

Limited to one-sided relationships, the torts of breach of fiduciary duty and negligent misrepresentation claims do not reach the alleged conduct. Accordingly, Counts III and VII must be dismissed.

## VI.    Tecnomatic's Denominated "Unfair Competition" Claims— Counts VIII Through X—State No Claim For Relief.

Tecnomatic raises these competition-related claims: "Federal Unfair Competition"; "State Law Unfair Competition"; and "Common Law Unfair Competition." These claims are futile. First, courts have recognized that there simply is no federal common law of general unfair competition. *McCarthy on Trademarks and Unfair Competition* (§ 27:7 (4th ed.)), *citing International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980), *cert. denied*, 452 U.S. 941 (1981). Moreover, under Indiana law, Tecnomatic's factual allegations state no claim for relief under Indiana statutory or common law in any event.

As a threshold matter, the Court is left to guess *what* Indiana (or even Illinois) law Remy has purportedly violated. *See Twombly*, 127 S.Ct. at 1964 (requiring sufficient detail to give the defendant "fair notice of what the … claim is"). The Indiana Trademark Act, which protects trademarks registered with the Secretary of State, suggests no basis for relief. Ind. Code § 24-2-1-13. And while Indiana courts do recognize a cause of action for unfair competition, Tecnomatic has not pled it. The Indiana Supreme Court defines this tort as "the attempt to create confusion concerning the source of the unfair competitor's *goods*." *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (emphasis added). Yet Tecnomatic claims confusion "as to the true origin of the Remy *technology*." Compl. ¶ 185 (emphasis added). In other words, Tecnomatic contends that Remy confused the market not about who made its products, but who developed its manufacturing technology. *See also* Compl. ¶ 174. It suggests no "unfair competition" under Indiana common law.

18

Worse, as discussed at pages 5-6 above, the Complaint fails to specify even what Tecnomatic's proprietary technology is and how Remy acquired it. Thus, it alleges insufficient *facts* to support any inference of misconduct. Additionally, as discussed below with regard to the Lanham Act claims, Tecnomatic fails to allege that it competes with Remy; therefore, any unfair competition claims must fail for lack of standing. Finally, Tecnomatic seeks to impose liability for the alleged misuse of confidential and proprietary information. Yet the IUTSA expressly preempts all such common law theories of liability. *See* Ind. Code § 24-2-3-l(c) (reciting that statute "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law."); *see also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992). Thus to the extent Tecnomatic pleads *common law* liability, it pleads itself out of court.

## VII. Tecnomatic Fails To State A Claim For False Or Misleading Representation Under Lanham Act § 43(a)—Count XI.

In Count XI of its Complaint, Tecnomatic alleges that Remy made false or misleading representations in a manner violating § 43(a)(1)(A) and (B) of the Lanham Act. Specifically, Tecnomatic alleges that Remy falsely represented itself as the creator of the stator technology it markets and sells and for which it obtained a grant from the United States Department of Energy. Compl. ¶¶ 174-91. Tecnomatic's claims are deficient.

Lanham Act § 43(a)(1) encompasses two distinct bases of liability: (A) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device (otherwise known as "false association" or "false endorsement"); and (B) false representations in advertising concerning the qualities of goods or services ("false advertising"). *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993). As a threshold matter, although

Tecnomatic recites by rote the elements for both bases of liability in Count XI, it fails to identify any designation used by Remy that is likely to suggest any association or endorsement of Remy with or by Tecnomatic, and therefore any claim under Lanham Act § 43(a)(1)(A) should be dismissed.[9]

A plaintiff must plead and prove that "he or she is or is likely to be damaged" to recover for either false association or false advertising under §§ 43(a)(1)(A) and (B) of the Lanham Act. Tecnomatic does not and cannot do so in either case, as demonstrated in the false advertising context as follows:  "In order to have standing to allege a false advertising claim … the plaintiff must assert a discernible competitive injury." *L.S. Heath*, 9 F.3d at 575 (7th Cir. 1993). A false advertising claim requires some evidence of either actual damage or the probability of future damage. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578 (7th Cir. 2001). "A private plaintiff must show, among other things, that it 'has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.'" *Id*. at 581 (citing *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)). The Lanham Act's purpose is to protect persons engaged in commerce against unfair competition, and this Court has effectuated this expressed intent by making commercial competition a prerequisite to false advertising claims. *Illinois Tool Works, Inc. v. Chester Bros. Machined Prods., Inc.*, 2006 WL 2191982 (N.D. Ill.) ("[T]he Court holds that plaintiff must allege that it is in commercial competition with defendant to state a viable

---

[9] Tecnomatic alleges only that Remy falsely represents itself as the creator of the stator technology. However, "origin in [Lanham Act § 43(a)(1)(A)] denotes only the manufacturer or producer of the physical goods and not the creator of the intellectual property embodied in those goods … false claims of creation of the intellectual property content of a product must fit within the false advertising prong of §43(a)(1)(B)." *McCarthy on Trademarks and Unfair Competition* (§ 27:75 (4th ed.)).

false advertising claim").[10] Finally, a sufficient claim must include a real possibility of damage and not the mere assertion of a belief. *Chromium Indus., Inc. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544 (N.D. Ill. 1978), *superseded by statute on other grounds*.

Count XI's conclusory allegations of damage fail because Tecnomatic is not in commercial competition with Remy in the United States. Compl. ¶¶ 271-80. Tecnomatic does not allege that it offers products in the United States or even that it does any business in the United States whatsoever. Tecnomatic states only that it is located in Corropoli, Italy, "is a world recognized leader in the design, manufacture, and implementation of stators and stator windings," is "internationally recognized" in such regard, and "has been in the stator business since 1973." Compl. ¶¶ 10, 29, 33. Tecnomatic further alleges that it shipped proprietary equipment from Italy to Mexico. Compl. ¶¶ 106-18. None of these allegations suffices to plead that Tecnomatic competes with Remy in the United States such that it could suffer injury from Remy's alleged false advertising. The Third Circuit has held that the plaintiff did not have standing when it sued the makers of Smirnoff brand vodka for falsely advertising that its vodka was made in Russia. *Joint Stock Soc'y v. UDV North Am., Inc.*, 266 F.3d 164, 176 (3d Cir. 2001). "The defendants' allegedly false advertising cannot have harmed the plaintiffs by channeling their customers toward Smirnoff when the plaintiffs have not even begun offering their product for sale in the United States." *Id.; see also PDK Labs., Inc.*, 103 F.3d at 1112; *Alphamed Pharm. v. Arriva Pharm.*, 391 F.Supp.2d 1148 (S.D. Fla. 2005); *Marshall v. Proctor & Gamble Manuf.*

---

[10] This approach conforms to that of other Circuits. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ("Friedlander and PDK are not competitors for purposes of Lanham Act standing because Friedlander does not currently sell a retail weight loss product that competes with PDK's products"); *see also Hutchinson v. Mary Pfeil*, 211 F.3d 515 (10th Cir. 2000) ("Mr. Hutchinson's standing is deficient precisely because he has no product in competition with the Pfeils' painting.").

*Co.*, 170 F.Supp. 828 (D. Md. 1959). Similarly, here, Tecnomatic has not alleged that it has any

U.S. sales that have been negatively impacted by Remy's alleged false advertising.

## VIII.   Tecnomatic Fails To State A Claim For Correction Of Inventorship—Count XII.

In seeking to correct the inventorship of Remy's patent applications under 35 U.S.C.

§ 116, Tecnomatic fails to state a claim under which relief may be granted. Section 116 of the

Patent Act specifies that the "Director" of the U.S. Patent Office shall address such matters—not

the district courts. *See Memorylink Corp. v. Motorola, Inc.*, 2009 WL 464338, *11-12 (N.D. Ill.

2009), (citing *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n. 1 (Fed. Cir. 2004) ("The

text of section 116 … plainly does not create a cause of action in the district courts to modify

inventorship on pending patent applications."); *see also Brown v. Toscano*, 254 F.R.D. 690, 695

(S.D. Fla. 2008). Consequently, Count XII must be dismissed.

## CONCLUSION

Because Tecnomatic's complaint does not state plausible claims for relief with respect to

any of the Counts alleged against the Remy Defendants, it must be dismissed.

> Respectfully submitted,
> REMY INC., REMY INTERNATIONAL
> INC., DELCO REMY MEXICO, S.R.L. DE
> C.V., AND REMY COMPONENTES S. DE
> R.L. DE C.V.
>
>
> By: /s/  Joseph H. Yeager, Jr.
>            One of Their Attorneys

Joseph H. Yeager, Jr.
BAKER & DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, Indiana  46204
317-237-0300 (tel)
317-237-1000 (fax)
jay.yeager@bakerd.com

David M. Allen (#0032239), *Of Counsel*
Trina K. Taylor (#6297760)
BAKER & DANIELS LLP
311 S. Wacker Drive, Suite 4400
Chicago, Illinois  60606
312-212-6500 (tel)
312-212-6501 (fax)
david.allen@bakerd.com
trina.taylor@bakerd.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2011, a copy of the foregoing Remy Defendants'

Memorandum in Support of Their Renewed Motion to Dismiss was filed electronically.  Notice

of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

Donald Alexander Cole
Kara Eve Foster Cenar
Mariangela M. Seale
Steven Patrick McKey
Andrew C. Warnecke
Bryan Cave LLP
161 North Clark Street
Suite 4300
Chicago, IL 60601
donald.cole@bryancave.com
kara.cenar@bryancave.com
merili.seale@bryancave.com
patrick.mckey@bryancave.com
andrew.warnecke@bryancave.com

Charles P. Rice
Patrick David Murphy
Boveri Murphy Rice, LLP
400 Plaza Building
210 South Michigan Street
South Bend, IN 46601
crice@bmrllp.com
pmurphy@bmrllp.com

Paula L. Zecchini
Bryan Cave LLP
3161 Michelson Drive
Suite 1500
Irvine, CA  92612-4414
paula.zecchini@bryancave.com

James E. Michel
Barnes & Thornburg
One North Wacker Drive
Suite 4400
Chicago, IL 60606
jmichel@btlaw.com

Victoria L. Nilles
Thompson Hine LLP
2000 Courthouse Plaza, NE
P.O. Box 8801
Dayton, OH  45401
victoria.nilles@thompsonhine.com

C. John Brown
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204
john.brown@btlaw.com

/s/ Joseph H. Yeager, Jr.

BDDB01 6814997v1