REMY INC.                          )
                    Plaintiff,     )
                                   )
          vs.                      )
                                   )
TECNOMATIC, S.P.A.,                )
                                   )
                    Defendant,     )
_____    )
                                   )
TECNOMATIC, S.P.A.,                )
                    Plaintiff,     )
                                   )
          vs.                      ) 1:11-cv-00991-SEB-MJD
                                   )
REMY, INC.,                        )
HANSON SYSTEMS, LLC D/B/A EAGLE     )
TECHNOLOGIES GROUP,                )
ODAWARA AUTOMATION, INC.,          )
REMY INTERNATIONAL, INC.,          )
DELCO REMY MEXICO, S.R.L. DE        )
C.V.,                              )
REMY COMPONENTES S. DE R.L. DE      )
C.V.,                              )
1-10 DOES,                         )
                                   )
                    Defendants.    )

## Report & Recommendation

This matter comes before the Court on Defendant Tecnomatic,

S.P.A.'s Motion to Exclude the Expert Report of William S.

Howard. [Dkt. 131]. For the reasons discussed below, the Court

recommends **GRANTING** in part and **DENYING** in part the Motion.

# I. Background

Plaintiff Remy, Inc. sued Tecnomatic for breach of contract and breach of express and implied warranties based upon Tecnomatic's design and production of a manufacturing system for Remy. Presently at issue is the expert report of Dr. Howard, who gives opinions in two general areas: (1) the functionality of Tecnomatic's production system; and (2) warranty/contract coverage. Dr. Howard has a Ph.D. in Engineering and has more than twenty-four years experience as an engineer. For the last fifteen years, Dr. Howard has primarily focused on the design and development of industrial machinery and equipment.

Remy manufactures original and aftermarket electrical components and aftermarket powertrain and drivetrain components for various vehicles. In 2004, one of Remy's customers asked Remy to supply an electric drive motor assembly for a two-mode hybrid powertrain. After designing an electric drive motor assembly (referred to as the "EP 8 Motor") for its customer, Remy needed production systems to manufacture the EP 8 Motor and subcomponents of the EP 8 Motor including a stator (the "EP 8 Stator"), which is the stationary part of an electric motor.

Remy contacted Tecnomatic to assist with the design and production of a system that would make the EP 8 Stator. Based in Italy, Tecnomatic has expertise designing systems to produce stators. To manufacture the EP 8 Stator, Remy needed a

manufacturing system capable of bending large copper wires into a hairpin or "U" shape, inserting the bent wires into sixty slots in the cylindrical steel base, twisting the ends of the copper wires into place to make the necessary electrical connection, and welding the twisted wires into place.

On May 25, 2005, Tecnomatic provided Remy with a Budget Quote for the Supply of Production Line for Stators Winding. The quote specified an 85% efficiency rate and the production of one EP 8 Stator every 225 seconds. [08-1227 Dkt. 1, Exhibit A at 8]. According to Remy, the production system never operated at 85% efficiency and never produced EP 8 Stators at a cycle time of 225 seconds per part for more than a few hours. In early 2008, Remy shut down the production system and replaced it with another system. Remy now alleges that the machinery did not function to specification and Tecnomatic breached the contract and both express and implied warranties.

## II. Legal Standard

Under the Federal Rules of Evidence, an expert is any person with "'specialized knowledge' due to 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton*, 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed. R. Evid. 702). Expert witnesses may testify "in the form of an opinion … if (1) the testimony is based upon sufficient

facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The primary purpose of Rule 702 is to exclude experts offering opinions based on junk science. *Lennon v. Norfolk and Western Ry. Co.,* 123 F. Supp. 2d 1143, 1147 (N.D. Ind. 2000).

The court acts as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). The Seventh Circuit has adopted a three-step process in analyzing expert testimony. *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007). The court must first determine whether the expert is qualified.[1] *Id.* Second, the court must determine whether the expert's testimony is reliable, which requires an examination of the expert's methodology. *Id.* Lastly, the district court must determine whether the testimony is relevant in that it assists the trier of fact in either understanding the evidence or in determining a fact in issue. *Id.*

In its role as a gatekeeper, the court has a great deal of discretion to determine both "the method by which the

---

[1] Tecnomatic does not challenge Dr. Howard's qualifications to offer opinions regarding the machinery. The Court finds Dr. Howard sufficiently qualified to offer opinions regarding the Tecnomatic machinery given his education and extensive experience in the design and development of machinery.

4

reliability of the proposed expert testimony will be measured and whether the testimony is, in fact, reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007). In making this determination, the court looks at the facts and circumstances of the case. *Id.* The court, however, does not determine the correctness of the opinion. *Pizal v. Monaco Coach Corp.*, 374 F. Supp. 2d 653, 656 (N.D. Ind. 2005) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)). "The factual underpinnings of the analysis and the correctness of the conclusions are matters to be determined by the trier of fact." *Id.* (citing *Smith*, 215 F.3d at 718).

## III. Discussion

In its brief, Tecnomatic asks this Court to exclude Dr. Howard's report, thereby precluding his testimony, arguing that: (1) the report lacks sufficient facts or data and Dr. Howard's opinions are speculative and unreliable; (2) Dr. Howard's methodology lacks reliability; (3) Dr. Howard improperly opines about legal questions and the intent of the parties; and (4) Dr. Howard should be excluded from opining or testifying about software that he did not observe. The Court will address Tecnomatic's arguments in turn.

### A. Sufficiency Of The Facts And Data

In challenging the sufficiency of the facts or data Dr. Howard relied upon in his report, Tecnomatic argues that: (1) the bulk

of Dr. Howard's report is comprised of Remy employees' opinions;
(2) Dr. Howard's inspection of the machinery was incomplete and
provides no support for his opinions; and (3) the report does
not adequately cite to the documents relied upon by Dr. Howard.
The Court finds that the facts and data relied upon by Dr.
Howard in his report are sufficient to form his opinions
regarding Tecnomatic's machinery.

### i. Dr. Howard's Reliance On Remy Employees

According to Tecnomatic, Dr. Howard's opinions are nothing
more than Remy's opinions and Tecnomatic cites eleven examples
in support of this argument. [08-1227 Dkt. 192 at 8]. Of
those, ten are from section 2 of Dr. Howard's report entitled
"Problems/Issues with Tecnomatic's Machines." [Dkt. 08-1227
Dkt. 193 Ex. 1 at 4]. According to the report, section 2 covers
Dr. Howard's findings after a trip to Mexico to visit the Remy
facility that produced the EP 8 Motors. [*Id.*]. The information
within section 2 comes from Dr. Howard's personal evaluation of
the machinery and interviews with Operations Manager Silvestre
Mendoza, and two maintenance technicians, Luis Castillo and
Daniel Torres. [*Id.*]. Remy contends that section 2 merely
recites the factual basis for Dr. Howard's later analysis.
[Dkt. 138 at 7].

Not surprisingly, courts require experts to offer their own
opinions; rather than "merely parrot[ing] information provided

to him by a party." *King-Indiana Forge, Inc. v. Millennium Forge, Inc.,* No. 1:07-cv-00341-SEB-DML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) (citation omitted). Such a requirement logically flows from the mandates of Rule 702 and *Daubert*. Otherwise, it would be difficult to gauge the reliability of the opinions and the opinions would be of little assistance to the trier of fact. That said, experts may base an opinion on information provided to them so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject…" even when the facts or data would be inadmissible. Fed. R. Evid. 703. Generally, in developing an opinion, experts may rely on a wide variety of sources. *Cooper v. Carl. A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000). Thus, as is the case here, an expert may use information provided by employees as a basis for his opinions if (1) experts in the particular field would reasonably rely on such information, and (2) the expert does more than parrot the information provided to him.

**1. Reasonableness of Relying On Information Provided By Remy Employees**

The Court finds it reasonable for Dr. Howard to rely on the information provided by Remy employees in forming his opinions. Remy sought Dr. Howard's opinions about the design and performance of Tecnomatic's machinery. This required Dr. Howard

to find out what the reported problems were; in so doing, it is logical to talk to those with first-hand knowledge of the alleged problems.

Tecnomatic argues that Dr. Howard took no steps to independently verify the employees' statements through independent testing or by interviewing more than three Remy employees and suggests the employees' statements are biased. [08-1227 Dkt. 192 at 11]. Essentially, Tecnomatic's position would require Dr. Howard to personally observe or test every reported problem rather than relying on those most familiar with the problems. The Court finds no such requirement in the Rules and Rule 703 expressly provides otherwise. Rule 703 requires this Court to determine whether it was reasonable for Dr. Howard to rely on these statements. Because the Remy employees had first-hand knowledge of the problems with the machinery, they were the only source of the information short of Dr. Howard attempting to re-create every problem.

Nor was it unreasonable for Dr. Howard to interview only three Remy employees. Dr. Howard interviewed the Operations Manager of the facility and two maintenance technicians assigned to the Tecnomatic machinery. [08-1227 Dkt. 193 Ex. 1 at 4]. These employees possessed the necessary information for Dr. Howard to form his opinions. Dr. Howard only had to interview enough employees to gather sufficient facts to form his opinions.

There is no indication that other Remy employees had more or different information than the three employees interviewed.  As such, Dr. Howard was not required to verify information provided by the three Remy employees by interviewing other Remy employees.

Additionally, Tecnomatic will have the opportunity to challenge the bases and sources of Dr. Howard's opinions through cross-examination.  *Cooper*, 211 F.3d at 1021.  Any concern regarding bias on the part of the Remy employees goes to the credibility of Dr. Howard's opinions and not to their admissibility. *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005) (citations omitted).

**2. Whether The Opinions Merely Parrot Remy Employees**

Dr. Howard's opinions do not merely parrot information provided by Remy employees.  Section 2 contains most of the challenged "opinions."  Section 2 lists various parts, describes each part's function, and describes the reported problems/issues with each particular part.  [08-1227 Dkt. 193 Ex. 1 at 4-23].  The Court agrees with Remy that section 2 consists largely of a factual recap of the alleged problems with Tecnomatic's machinery as reported by the three Remy employees interviewed or as observed by Dr. Howard.

As an example, in section 2.1, discussing the straightener, the report stated, "According to the maintenance technicians, the straightener did not work very well." [Dkt. 193 Ex. 1 at 4]. Tecnomatic challenges later statements in section 2.1 involving the straightener including "'the straightener did not cause problems in-and-of itself,' it 'resulted in jams/failure further in the process'" and the statement that the straightener "'didn't work very well.'" [08-1227 Dkt. 192 at 8]. Tecnomatic challenges a number of similar statements throughout section 2 including "the rollers wore down often," the "vacuum system …did not work very efficiently," the washer used in the punch "would often break," and the "punch head broke roughly every 2 weeks." [*Id.* at 9]. In the report, the statements in section 2 appear as more of a factual account of the reported problems with the machinery during the course of its operation than they do opinions, which are in sections 3, 4, and 5 of the report. However, to the extent section 2 contains opinions not found elsewhere in the report, Dr. Howard is precluded from offering them as his own. Thus, in section 2, Dr. Howard is not proffering opinions that merely parrot Remy employees. Rather, Dr. Howard lays out the factual basis for his opinions.[2]

---

[2] The Court does not decide the extent to which Dr. Howard may testify regarding facts or data contained in section 2. Under Federal Rule of Evidence 703, if the facts or data would be inadmissible, for example hearsay statements, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion

Dr. Howard's later opinions, while incorporating information gathered from Remy employees, do more than parrot the Remy employees' statements. As an example, in section 3, Dr. Howard opines that the twist tooling and twist spindle broke at an extremely high rate. [08-1227 Dkt. 193 Ex. 1 at 27]. Dr. Howard came to this conclusion from information provided to him regarding the number of times these parts broke requiring replacement or repair. [*Id.* at 11, 17]. However, the reported number of times the parts broke could be well within the expected limits, which would support the opposite conclusion reached by Dr. Howard. Thus, the opinion that the parts broke too frequently requires Dr. Howard to make a conclusion that goes beyond the Remy employees' statements.

In conclusion, Dr. Howard may reasonably rely upon Remy employees' statements in forming his opinion. The Court finds that, under Rule 703, experts in the field of engineering would reasonably rely upon such information because the employees were a first-hand source of the information. The Court also finds that Dr. Howard opinions do more than merely parrot the opinions of Remy employees.

---

substantially outweighs their prejudicial effect." Rule 703 applies when the facts or data would not be admissible for substantive purposes. *See* Fed. R. Evid. 703 advisory comm.'s note. If the facts or data are admissible, then Rule 403 should govern. It would be premature for the Court to make that determination at this stage of the litigation and it need not do so to address the instant motion.

### ii. Dr. Howard's Inspection Of The Machinery

Tecnomatic next argues that Dr. Howard conducted an incomplete inspection of the machinery in Mexico and that the inspection provides no support for his opinions. [08-1227 Dkt. 192 at 13]. Tecnomatic lists a number of items that it claims renders Dr. Howard's inspection incomplete, including Dr. Howard's failure to (1) examine numerous parts of the allegedly problematic machines, (2) run any tests on the machinery, (3) examine the machine's software, (4) know whether the parts he examined were original or replacement/modified parts, and (4) compare the modified parts with original Tecnomatic parts used. [08-1227 Dkt. 192 at 13-14].

As far as Dr. Howard's failure to examine numerous parts, Tecnomatic's own expert was not able to examine the parts either because they were no longer at the facility or because Remy did not allow the machine to be disassembled to gain access to the part. [*See* Dkt. 138 Ex. 3 Supplement to the Rebuttal Expert Report of Pierluigi Beomonte Zobel, Ph.D. at 2]. Similarly, Remy did not allow either parties' experts to operate or test the machinery. Thus, these arguments would support excluding both parties' experts and go more towards the weight the trier of fact should give Dr. Howard's opinions than to their admissibility. As for the lack of testing or examining the software, Dr. Howard gives no opinion regarding the software and

Dr. Howard's failure to examine the software does not affect the opinions he does offer.

Finally, given Dr. Howard's opinions, it is unnecessary for Dr. Howard to know whether the parts he examined were original Tecnomatic parts or replacement/modified parts. In regard to the Belleville washers, Dr. Howard opines that the cause of the problems was the faulty design of the punch dies and not the specific washer used, because there was only a limited range of washers that could be utilized and none of those worked. [08-1227 Dkt. 193 Ex. 1 at 26]. Nor does it matter whether Dr. Howard compared the original parts with the replacement parts. Dr. Howard opines that, after August 6, 2007, none of the welding issues can be attributed to the locally sourced parts because the welding issues continued throughout the entire production run. [*Id.* at 29]. Thus, there would be no need for Dr. Howard to differentiate between Tecnomatic parts or modified parts, because, according to him, the parts used had no effect on the production run.

During his time in Mexico, Dr. Howard spent, at a minimum, six hours inspecting the production machine and talking with Remy employees regarding various problems with the machine. [08-1227 Dkt. 193 Ex. 2, Howard Dep. at 347-48]. While Dr. Howard could have done more in evaluating the machinery, Dr. Howard's

evaluation is sufficiently complete to provide support for his opinions.

### iii. The Adequacy Of The Report's Citations To Documents

Lastly, Tecnomatic argues that Dr. Howard's reliance on every document he reviewed, but did not specifically cite to in his report, does not cure the deficiencies in his report. [08-1227 Dkt. 192 at 15]. Tecnomatic argues that Dr. Howard merely lists generic categories of information that "encompasses thousands of pages of documents, testimony, and material that he allegedly reviewed." [*Id.*]. In response, Remy argues that there is no obligation to include a pinpoint cite after every sentence in the report. [Dkt. 138 at 9].

Federal Rule of Civil Procedure 26(a)(2), in relevant part, requires an expert report to contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." In his report, Dr. Howard states that he relied on the site visit to Mexico to inspect the machinery, the Complaint, the machinery manuals, various photos, documents, and movies taken by Remy, and depositions of Kevin Young, Silvestre Mendoza, Mark Stephenson, Maurilio Micucci, Mauro Miglioradi, and Terry Oaf along with the exhibits to those depositions. [08-1227 Dkt. 193 Ex 1 at 4]. While Tecnomatic takes issue with Dr. Howard's lack of specific citation, the

report has at least thirty-nine footnotes citing to deposition
testimony and exhibits.  Moreover, Tecnomatic fails to cite any
case law or rule requiring such extensive citation.  Rule
26(a)(2) required Dr. Howard's report to contain the facts or
data that Dr. Howard considered; the report is sufficient in
that regard as well.

In summary, the Court finds that the statements from Remy
employees, Dr. Howard's inspection of the machinery, along with
the other materials relied on by Dr. Howard, including videos of
the production system in operation, provided him with sufficient
facts and data to form his opinions regarding Tecnomatic's
machinery.  Tecnomatic may challenge those facts and data at
trial.

**B. The reliability of Dr. Howard's Methodology**

Tecnomatic next argues that Dr. Howard performed no testing or
analysis and does not articulate any reliable methodology.[3]  [08-
1227 Dkt. 192 at 16].  However, not every opinion calls for or
requires testing.  For example, "an expert might draw a
conclusion from a set of observations based on extensive and
specialized experience."  *Smith*, 215 F.3d at 718 (quoting *Kumho*

_____

[3] As an exhibit to Remy's Response in Opposition, Remy included a declaration
from Dr. Howard that provided his methodology, which involved a series of
steps that Dr. Howard took to arrive at his opinions.  [Dkt. 138 Ex. 1 at 3].
In reply, Tecnomatic argues that Dr. Howard's declaration is tantamount to a
supplemental report submitted after the close of expert discovery and asks
this Court to exclude it.  [Dkt. 153 at 2].  The Court need not address
whether the declaration is an improper supplemental report because the Court
did not consider the declaration in its decision on this matter.

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999)).

Further, expert testimony founded on experience, rather than
data, does not in and of itself make the testimony unreliable.
*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th
Cir. 2010).

Given the nature of many of Dr. Howard's opinions, testing
would provide little, if any, additional support.  Dr. Howard
could have run the machinery to observe the punch dies breaking
and then form an opinion that the punch dies broke too often,
but that would only verify what Remy employees had already told
Dr. Howard.  This Court has already determined that Dr. Howard
is not required to independently verify the information gathered
from Remy employees.

Dr. Howard's methodology can be summed up quite simply, he
gathered information about the problems/issues with the
machinery by interviewing Remy employees, reviewing various
documents, photos and videos, and visiting the site.  From the
information gathered, he applied his knowledge, experience, and
education to form his opinions.  While his report does not
explicitly state, "here is the methodology I used," it is
readily apparent from reading his report how he arrived at his
opinions regarding Tecnomatic's machinery.  Just because Dr.
Howard employed a rather straightforward methodology, does not
automatically render his opinions unreliable.

Contrary to Tecnomatic's arguments, Dr. Howard's opinions are more than conclusory, speculative, and unreliable assertions. Tecnomatic challenges Dr. Howard's opinions that various parts broke too frequently. [08-1227 Dkt. 192 at 18]. For example, Tecnomatic challenges the reliability of Dr. Howard's opinion that the "punch dies broke entirely too frequently." [08-1227 Dkt. 192 at 18]. Dr. Howard comes to this conclusion because of the part's critical nature, expense to replace, and six-week lead-time for a replacement. [08-1227 Dkt. 193 Ex. 1 at 27]. By the very nature of the opinions, an element of subjectivity exists in concluding that the parts broke too frequently. However, given Dr. Howard's extensive experience and his explanations as to how he arrived at these opinions, the Court finds them sufficiently reliable.

Dr. Howard also explains his opinion that the design of machinery caused the problems and not some other source, such as the parts used or the operators. As previously mentioned, Dr. Howard explains why it was a design issue and not the Belleville washers or other locally sourced parts that caused the problems with the machinery. [08-1227 Dkt. 193 Ex. 1 at 26, 29]. Additionally, Dr. Howard explains why the reported problems with the machinery were not attributable to the quality of Remy operators or maintenance personnel. According to the report, Dr. Howard reviewed the production data, which indicated "no

significant difference in the production rates when Tecnomatic personnel were on site (versus when Remy operated the machinery entirely on its own.)" [*Id.* at 27].  Thus, it is Dr. Howard's opinion that if the problems were attributable to Remy operators, there would be a noticeable difference in the production rates when Tecnomatic personnel were on-site.

Moreover, Dr. Howard explains that, based on the machinery's manuals, the machinery was designed to be automatic or semi-automatic and required minimal involvement of the operator beyond supplying parts and pressing buttons.  [*Id.* at 36].  Thus, Dr. Howard's opinions, as a whole, are not mere conclusory assertions and his methodology is sufficiently reliable to avoid wholesale exclusion of his opinions.  *See Smith*, 215 F.3d at 721 n.3 (explaining that district court may apply requirements for admission of expert testimony to individual pieces of proposed testimony found to be irrelevant or unreliable rather than excluding the testimony entirely).

However, a few of Dr. Howard's opinions regarding Tecnomatic's machinery merit further discussion.  In section 3.7, titled "Vision System," Dr. Howard fails to give an opinion on the vision system.  [08-1227 Dkt. 193 Ex. 1 at 32].  Rather, Dr. Howard merely discusses Remy's use of the system.  Likewise, Dr. Howard's opinion that the machinery was delivered late to Remy's facility is not actually an opinion.  [*Id.* at 37].  Lastly, Dr.

Howard provides a list of design practices in which he opines that the reported problems could have been avoided had Tecnomatic "manufacture[d] the punch out of harder material." [08-1227 Dkt. 193 Ex. 1 at 28]. In his deposition, however, Dr. Howard stated that he did not know the material used to manufacture the punch. [08-1227 Dkt. 193 Ex. 2, Howard Dep. at 149-50]. As such, Dr. Howard's opinion is unreliable on this matter. Therefore, Dr. Howard is precluded from offering opinions regarding the vision system, the alleged lateness of the delivery, or the materials used to manufacture the punch.

## C. Dr. Howard's Opinions on Legal Questions and the Intent or Knowledge of the Parties

Tecnomatic argues that Dr. Howard should not be allowed to render opinions regarding warranty provisions because such opinions are impermissible legal conclusions. [08-1227 Dkt. 192 at 28]. In response, Remy agrees that Dr. Howard cannot offer opinions regarding legal issues, but Dr. Howard may offer testimony that embraces an ultimate issue to be decided by the jury. [Dkt. 138 at 19].

Under Federal Rule of Evidence 704, an opinion is not automatically objectionable because it embraces an ultimate issue in the case. Fed. R. Evid. 704. However, this does not lower the bar so as to admit all opinions because the opinions must still be helpful to the trier of fact and must do more than

19

"merely tell the jury what result to reach." Fed. R. Evid. 704 advisory comm.'s note. Generally, opinions expressing legal conclusions do not assist the trier of fact and do nothing but tell the jury what result to reach. *Superior Aluminum Alloys, LLC, v. U.S. Fire Ins. Co.*, No. 1:05-cv-207, 2007 WL 1850858, at *8 (N.D. Ind. June 25, 2007) (citations omitted). As such, an expert should steer clear from offering legal conclusions that will determine the outcome of the case. *Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

As an example of Dr. Howard's alleged impermissible legal conclusion, Tecnomatic cites to section 3.6, titled Other Broken Parts, where Dr. Howard lists seventeen parts and opines that Tecnomatic should have replaced or repaired the parts under the warranty. [08-1227 Dkt. 193 Ex. 1 at 27]. In response, Remy argues that Dr. Howard should be allowed to express his opinion that certain parts and tooling that broke were not "wear items," but instead were commercial parts of the sort that Tecnomatic warranted to be free from material defects. In opining that Tecnomatic should have replaced or repaired certain parts, Dr. Howard had to make conclusions regarding the legal effect, if any, of warranty provisions in various quotes and the purchase order issued by Remy. Generally, the judge interprets contracts because "[c]ontracts mean what they say when read in light of legal principles …." *Westfield Ins. Co. v. Sheehan Const. Co.,*

*Inc.*, 564 F.3d 817, 819 (7th Cir. 2009). The Court finds that Dr. Howard may express his opinion regarding whether a part should be considered a "wear item," as such an opinion does not call for a legal conclusion. However, Dr. Howard cannot offer opinions that require interpreting any contracts between the parties including any warranty provisions because such opinions impermissibly cross the line into proffering legal conclusions.

Next, Tecnomatic challenges Dr. Howard's opinions regarding the contractual knowledge and intent of the parties. [08-1227 Dkt. 193 Ex. 1 at 28]. Dr. Howard attempts to opine on what Remy and Tecnomatic knew about the run rate and that the parties were calculating efficiency in the same manner. Frankly, Dr. Howard's opinions regarding what the parties knew are nothing more than speculation and do not assist the trier of fact. *See George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2d 928, 933 (N.D. Ill. 2011) (excluding state of mind testimony as speculative and irrelevant). Moreover, Dr. Howard is not qualified to proffer opinions on what the parties promised or what the parties knew or intended. Dr. Howard is an engineer, not a mind reader. Thus, Dr. Howard may not opine regarding the parties' knowledge or intent, or any matter requiring interpretation of any warranty provisions or contracts between Tecnomatic and Remy. To be clear, Dr. Howard may still offer opinions as to ultimate issues such as whether certain parts

were "wear items" and whether the machinery was capable of operating at a particular rate and efficiency.

**D. Testimony Regarding The PLC Software**

Lastly, Tecnomatic argues that the Court should preclude Dr. Howard from testifying regarding the PLC software because his report contains no opinions regarding the software. [Dkt. 192 at 31]. In response, Remy agrees that Dr. Howard's report contains no opinions about the Tecnomatic software, but argues no exclusionary order is needed. [Dkt. 138 at 20]. "The purpose of the [expert] report is to 'set forth the substance of the direct examination.'" *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007) (quoting Fed. R. Civ. P. 26 advisory comm.'s note). Having offered no opinion in the report, Dr. Howard cannot later offer opinions regarding the PLC software. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial …."). Thus, Dr. Howard is precluded from offering opinions regarding the PLC software.

# IV. Conclusion

For the above stated reasons, the Court recommends **GRANTING** in part and **DENYING** in part Tecnomatic's Motion to Exclude.[4] [Dkt. 131].

Dated:  01/25/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:

David M. Allen
BAKER & DANIELS LLP-Chicago
david.allen@bakerd.com

Kara E. F. Cenar
BRYAN CAVE LLP
kara.cenar@bryancave.com

Donald Cole
Byan Cave LLP.
donald.cole@bryancave.com

Charles D. Cooper
THOMPSON HINE LLP
chad.cooper@thompsonhine.com

Ryan Michael Hurley
FAEGRE BAKER DANIELS LLP - Indianapolis
ryan.hurley@FaegreBD.com

David P. Irmscher
BAKER & DANIELS
david.irmscher@bakerd.com

Colby Anne Kingsbury
Faegre Baker Daniels LLP
colby.kingsbury@FaegreBD.com

Thomas A. Knoth

---

[4] As a nondispositive Order, this Order is issued pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). Either party may serve and file objections to this order within 14 days after being served with a copy. Fed. R. Civ. P. 72(a).

THOMPSON HINE LLP
tom.knoth@thompsonhine.com

S. Patrick McKey
BRYAN CAVE LLP
patrick.mckey@bryancave.com

Patrick David Murphy
BOVERI MURPHY RICE  LLP
pmurphy@bmrllp.com

Nicholas W. Myles
THOMPSON HINE LLP
nicholas.myles@thompsonhine.com

Fred Anthony Paganelli
TAFT STETTINIUS & HOLLISTER LLP
paganelli@taftlaw.com

Charles P. Rice
BOVERI MURPHY RICE, LLP
crice@bmrllp.com

Mariangela M. Seale
BRYAN CAVE LLP
merili.seale@bryancave.com

Trina Kissel Taylor
BAKER & DANIELS LLP-Chicago
trina.taylor@bakerd.com

Andrew C. Warnecke
Bryan Cave LLP
andrew.warnecke@bryancave.com

Scott A. Weathers
THE WEATHERS LAW OFFICE
scott@sawlaw.net

Joseph H. Yeager Jr
BAKER & DANIELS - Indianapolis
jay.yeager@FaegreBD.com

Paula L Zecchini
BRYAN CAVE LLP
paula.zecchini@bryancave.com