```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF INDIANA
                 INDIANAPOLIS DIVISION


REMY INC.                              )
           Plaintiff,                  )
                                       )
      vs.                              )
                                       )
TECNOMATIC, S.P.A.,                    )
                                       )
           Defendant,                  )
_____)
                                       )
TECNOMATIC, S.P.A.,                    )
           Plaintiff,                  )
                                       )
      vs.                              ) 1:11-cv-00991-SEB-MJD
                                       )
REMY, INC.,                            )
HANSON SYSTEMS, LLC D/B/A EAGLE        )
TECHNOLOGIES GROUP,                    )
ODAWARA AUTOMATION, INC.,              )
REMY INTERNATIONAL, INC.,              )
DELCO REMY MEXICO, S.R.L. DE           )
C.V.,                                  )
REMY COMPONENTES S. DE R.L. DE         )
C.V.,                                  )
1-10 DOES,                             )
                                       )
           Defendants.                 )
```

**REPORT & RECOMMENDATION TO DENY TECNOMATIC'S MOTION FOR SANCTIONS PURSUANT TO RULE 37 [DKT. 213]**

This matter is before the Court on Tecnomatic, S.p.A.'s Motion for Sanctions Pursuant to

Rule 37. [Tecnomatic's Motion for Sanctions Pursuant to Rule 37, *Remy Inc. v. Tecnomatic*

1

*S.P.A.*, No. 1:11-cv-0991-SEB-MJD (S.D. Ind. Mar. 19, 2012), ECF No. 213 (hereinafter Dkt. 213).] For the reasons discussed below, the Court recommends **DENYING** the Motion.

**I.     Background.**

In 2004, Remy Inc. engaged Tecnomatic to design and manufacture a production system for parts for an electric motor. After Tecnomatic delivered most of the ordered components, Remy alleged that the equipment was delivered late and did not meet specifications. Remy discontinued use of several of the components it had purchased from Tecnomatic and replaced them with components made by other manufacturers. Remy then brought suit against Tecnomatic for breach of contract and breach of express and implied warranties. Tecnomatic has brought suit for breach of the parties' mutual confidentiality agreement wherein Tecnomatic and Remy agreed to share information and technology.

Tecnomatic's instant motion alleges that Remy's witnesses provided false deposition testimony and that Remy deliberately and in bad faith withheld documents from production. Remy responded that the witnesses did not commit perjury and that the documents have been produced in response to Tecnomatic's more recent discovery requests, which are premised upon Tecnomatic's more recent claims, but that when requested in the original 2008 action (Case No. 1:08-cv-1227-SEB-JMS), the documents were not relevant to any claim or defense then pending.

**II.    Legal Discussion.**

Tecnomatic's Motion fails for several reasons. First, Tecnomatic did not comply with its meet and confer obligations under Federal Rule of Civil Procedure 37 or Southern District of Indiana Local Rule 37-1. Second, the testimony of Remy's witnesses, when considered in full, shows that these witnesses did not falsely testify. Third, Tecnomatic did not seek to compel the allegedly deficient discovery responses from Remy related to discovery served in the 2008

action.[1] Remy consistently objected to producing certain documents and information in the 2008 action on relevancy grounds, but has produced the allegedly-withheld documents in response to Tecnomatic's 2011 claims to which Remy acknowledges those documents may be relevant. Finally, even if a discovery violation occurred, the dismissal of Remy's claims and/or defenses would be drastically severe and not proper in the present circumstances.

        **A.    Tecnomatic Failed To Meet and Confer Prior to Filing Its Motion for Sanctions.**

Tecnomatic's Motion for Sanctions is not properly before the Court because it fails to comply with Fed. R. Civ. P. 37 as well as L.R. 37-1.[2] Both of these rules require parties to meet and confer prior to filing discovery-related motions. Although Tecnomatic fails to specifically identify the subdivision of Fed. R. Civ. P. 37 that it seeks to invoke in its Motion, it does state in its Reply that "although subsection (b), by its express terms, contemplates a court order prior to filing the motion, subsections (c) and (d) do not." [Tecnomatic S.p.A.'s Reply to Remy, Inc.'s Response to Tecnomatic's Motion for Sanctions Pursuant to Rule 37, *Remy Inc. v. Tecnomatic S.P.A.*, No. 1:11-cv-0991-SEB-MJD (S.D. Ind. April 16, 2012), ECF No. 246 (hereinafter Dkt. 246).] Tecnomatic's Motion complains, in part, that Remy failed to fully-respond to written discovery requests that contained information relevant to and contrary to the deposition testimony of two witnesses. Federal Rule of Civil Procedure 37(d)(1)(B) provides:

---

[1] Throughout this order, the period during which Remy's originally-filed action (1:08-cv-1227-SEB-MJD) was pending, prior to its consolidation into this action on September 15, 2011 [Dkt. 129], will be referred to as the "2008 action."

[2] Although the Court relieved the parties of their meet and confer obligations during a status conference on June 25, 2012 [*see* Dkt. 286], Tecnomatic's Motion for Sanctions [Dkt. 213] was filed three months prior. As a result, Tecnomatic still had the obligation to meet and confer with Remy pursuant to Fed. R. Civ. P. 37 and L.R. 37-1 prior to filing its March 19, 2012 Motion for Sanctions.

> *(B) Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

The Motion also requests, in the alternative, that the Court compel further depositions of the previously-deposed witnesses. Federal Rule of Civil Procedure 37(a)(1) regarding motions to compel, also provides that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also Lewis v. Saint Margaret Mercy*, Civil No. 2:11-cv-313, 2013 WL 214239, at *3 (N.D. Ind. Jan. 17, 2013) ("Fed. R. Civ. P. 37(a) envisions a genuine two-way communication where the parties engage in a meaningful dialogue to resolve the issues without judicial intervention.").

Similarly, Local Rule 37-1 requires parties to meet and confer in good faith prior to filing discovery motions:

> **(a) Required Actions Prior to Court Involvement.** Prior to involving the court in any discovery dispute, including disputes involving depositions, counsel must confer in a good faith attempt to resolve the dispute. If any such dispute cannot be resolved in this manner, counsel are encouraged to contact the chambers of the assigned Magistrate Judge to determine whether the Magistrate Judge is available to resolve the discovery dispute by way of a telephone conference or other proceeding prior to counsel filing a formal discovery motion. When the dispute involves an objection raised during a deposition that threatens to prevent completion of the deposition, any party may recess the deposition to contact the Magistrate Judge's chambers.
>
> **(b) Requirements of Motion to Compel.** In the event that the discovery dispute is not resolved at the conference, counsel may file a motion to compel or other motion raising the dispute. Any motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. The court may deny any motion raising a discovery dispute that does not contain such a statement.

*See also Loparex, LLC v. MPI Release Techs., LLC*, Case No. 1:09-cv-1411-JMS-TAB, 2011 WL 1871167, at *2 (S.D. Ind. May 16, 2011) ("[T]he local rule contemplates an actual meeting

with a date, time, and place – whether by telephone, videoconference, or (if counsel's location permits) preferably face-to-face. An old-fashioned chat over coffee might prove especially productive.").

Here, Tecnomatic did not include any statement in its Motion that it met and conferred in good faith with Remy as contemplated by either Fed. R. Civ. P. 37 or L.R. 37-1. [*See* Dkt. 212; Brief in Support of Motions for Sanctions Pursuant to Rule 37, *Remy Inc. v. Tecnomatic S.P.A.*, No. 1:11-cv-0991-SEB-MJD (S.D. Ind. Mar. 19, 2012), ECF No. 214-1 (hereinafter Dkt. 214-1).] It appears that no such conference ever occurred. Remy states in its Response that "Tecnomatic has not conferred with Remy in the required good faith attempt to resolve the dispute regarding the Young and Perry deposition testimony, and has not filed or included the required statement regarding any aspect of this dispute." [Remy Inc.'s Response to Tecnomatic S.p.A.'s Motion for Sanctions Pursuant to Rule 37, *Remy Inc. v. Tecnomatic S.P.A.*, No. 1:11-cv-0991-SEB-MJD (S.D. Ind. April 5, 2012), ECF No. 240 at 3, n.3 (hereinafter Dkt. 240).] Tecnomatic did not refute this fact in either its Reply [Dkt. 246], or its Supplemental Submission [Tecnomatic's Supplemental Submission in Connection with Its Motion for Sanctions, *Remy Inc. v. Tecnomatic S.P.A.*, No. 1:11-cv-0991-SEB-MJD (S.D. Ind. July 18, 2012), ECF No. 308 (hereinafter Dkt. 308)].

It is within the Court's discretion to deny a discovery motion that is filed without "a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties." L.R. 37-1(b) ("The court may deny any motion raising a discovery dispute that does not contain such a statement."). Because Tecnomatic failed to meet and confer with Remy prior to filing its Motion for Sanctions, the Motion is not properly before the Court and is, therefore, **DENIED**.

### B. Tecnomatic's Motion for Sanctions Fails on Its Merits.

Even if Tecnomatic's Motion for Sanctions were properly before the Court, it would be denied on the merits. Although "[a] district court has inherent authority to sanction conduct that abuses the judicial process . . . [t]he sanction imposed should be proportionate to the gravity of the offense." *Montaño v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008) (citations omitted). To succeed on its Motion, Tecnomatic must show an abuse of the judicial process and the sanction must be proportionate to the gravity of the offense. Tecnomatic's Motion does not satisfy either criteria.

Tecnomatic's Motion is based on two complaints against Remy. First, Tecnomatic alleges that two of Remy's witnesses committed perjury for which Remy should be sanctioned. [Dkt. 213 at ¶ 1.] Second, Tecnomatic complains that "Remy has deliberately and in bad faith withheld documents from discovery." [*Id.* at ¶ 2.] Yet, the evidence presented by Tecnomatic does not establish that Remy's witnesses committed perjury, nor does it show that Remy has withheld documents in bad faith.

Tecnomatic bears a significant burden of proof when requesting that this Court dismiss Remy's claims. "Although dismissal with prejudice is a permissible judicial sanction for fraud on the court, the general rule is that before dismissing a suit with prejudice as a sanction for misconduct a court should consider the adequacy of a less severe sanction." *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999) (citations omitted); *Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003) ("[A] court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate."). "Of all possible sanctions, dismissal is considered 'draconian,' and we must be 'vigilant' in our review." *Maynard*, 332 F.3d at 467.

The burden of proof on such a motion is clear and convincing evidence. *Id.* at 468 ("[C]onsidering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case."). Tecnomatic urges the Court to use a preponderance of the evidence standard when considering its Motion. [Dkt. 214-1 at 6.] Although the Seventh Circuit suggested that the burden of proof in cases where a party seeks dismissal as a sanction for a Fed. R. Civ. P. 37 violation may be a preponderance of the evidence standard, the Court did not reach the burden issue because the evidence in those cases was "clear and convincing" and "manifest." *Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 724 n.1 (7th Cir. 2008) ("There is no need to resolve the standard here because the evidence was clear and convincing."); *Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) ("Soo Line has not, however, asked us to revisit *Maynard* (which did not discuss the Supreme Court's decisions) and use the preponderance-of-the-evidence standard, perhaps because the evidence of bad faith is manifest."). Consequently, *Maynard* remains the controlling authority in this Circuit – which requires clear and convincing evidence before dismissing claims for a Rule 37 violation. Yet, even if the burden was a preponderance of the evidence, Tecnomatic cannot carry its burden of proving Remy abused the judicial process. Tecnomatic has not satisfied its burden to prove that Remy's witnesses committed perjury or that Remy "deliberately and in bad faith withheld documents from discovery."

        **1.**     **Evidence that Remy's Witnesses Committed Perjury Has Not Been Established.**

Tecnomatic alleges that two of Remy's witnesses – Kevin Young, a Rule 30(b)(6) designee, and Stuart Perry, a former Remy employee – testified untruthfully and that such testimony was a willful, deliberate attempt by Remy to conceal the truth from Tecnomatic. [Dkt.

7

214-1 at 6-11.] Before considering whether Remy's witnesses testified falsely, the Court must consider the legal definition of "perjury."

"Perjury is different from confusion, mistake, or faulty memory; perjury is defined (at least in the federal criminal context) as 'false testimony concerning a material matter with the willful intent to provide false testimony.'" *Wallce v. McGlothan*, 606 F.3d 410, 426 (7th Cir. 2010 (citing *Montaño*, 535 F.3d at 564) (internal quotation marks omitted). Here, there is no evidence that either Mr. Young or Mr. Perry provided false testimony with the willful intent to do so. At best, Mr. Young's and Mr. Perry's testimony could be described as somewhat inconsistent with or contrary to the documentary evidence, which might provide for ample impeachment opportunity for Tecnomatic, but these inconsistencies do not rise to the level of perjury. Indeed, "[t]his is not the case where the witness concocted some elaborate alibi defense, only to later admit it was all a farce," nor is this a case where "the witnesses have admitted that their prior testimony in discovery or at trial was false." *Id.* (citing *United States v. Griffin*, 310 F.3d 1017, 1023-24 (7th Cir. 2002) (defendant created an alibi replete with falsehoods that was unsupported by witnesses allegedly part of the alibi); *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 702 (7th Cir. 2003) (plaintiff testified in a deposition that he had recorded conversations supporting his discrimination claim, but later admitted that he had not recorded those conversations).

### a. Mr. Young's Deposition Testimony.

Tecnomatic has not demonstrated that Mr. Young provided false testimony with the willful intent to do so. Tecnomatic argues that Mr. Young claimed in his deposition that "Eagle was given '***only*** product drawings of the stator. . . . They did not have access to the equipment, nor drawings.'" [Dkt. 214-1 at 9 (emphasis in original).] As noted by Remy, Tecnomatic's

8

quote above is not a direct quote from Mr. Young's deposition. Rather, it is the combination of two statements made by Mr. Young at two different times in his deposition. Tecnomatic cited only to page 59 of Mr. Young's deposition transcript in support of a quote that was pieced together from two pages of testimony that were four pages apart. [Dkt. 240 at Ex. A at 55:10-11 and 59:15-16.] Tecnomatic cannot cobble together parts of Mr. Young's answers to different questions on different pages of his deposition transcript in an attempt to create a claim for perjury. Tecnomatic's advocacy for its position flirts with Federal Rule of Civil Procedure 11's requirement that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Tecnomatic is cautioned to exercise care when making such representations to the Court in the future.[3]

At best, Mr. Young's testimony highlighted by Tecnomatic illustrates confusion between Mr. Young and Ms. Cenar (Tecnomatic's lawyer), which was clarified by additional testimony from Mr. Young.[4] Mr. Young testified that in the spring of 2007, Eagle was provided "only product drawings of the stator" in response to Ms. Cenar's question of whether Eagle was

---

[3] Tecnomatic also misinforms the Court that according to Mr. Young, "Remy provided Eagle only with product drawings of the stator (the finished product), but not the production line or the equipment used to manufacture the stator." [Dkt. 214-1 at 8.] This is factually incorrect. Mr. Young conclusively testified that Eagle had access to Tecnomatic's equipment and that they photographed the equipment. [Dkt. 240 at Ex. A at 53:4-53:22 and 57:5-57:21.] Although Tecnomatic does not appear to claim Mr. Young testifying falsely regarding Eagle's *access* to the equipment, Mr. Young's clarification of his response demonstrates the forthcoming nature of his testimony and raises serious questions for the Court regarding the veracity of Tecnomatic's counsel's advocacy.

[4] Although Tecnomatic repeatedly refers to Mr. Young as Remy's Rule 30(b)(6) witness, Mr. Young was designated as the Rule 30(b)(6) witness for Remy for a limited number of topics – none of which included documents or information provided by Remy to third party suppliers, such as Eagle, because this was not a topic in the Rule 30(b)(6) notice served by Tecnomatic. [*See* Dkt. 240 at Ex. C; Dkt. 240 at 7, n.6.] Although Mr. Young is still expected to testify truthfully, his statements regarding documents provided by Remy to third party suppliers was based on his personal knowledge and not as the corporate representative for Remy. Therefore, Remy had no obligation to educate Mr. Young on such topic.

provided anything "besides photographs, broken tools and the twist bench that Tecnomatic built for EP 8." [Dkt. 240 at Ex. A at 53-55; *id.* at Ex. A at 55:6-55:11.] Mr. Young also testified that during Remy's work on Phase II equipment (which was established by earlier questioning as the spring or first quarter of 2007), Eagle "did not have access to the equipment, nor drawings." [Dkt. 240 at Ex. A at 58-59; *id.* at Ex. A at 59:14-59:16.] Because emails from April and May 2008 between Mr. Young and others contain drawings of Tecnomatic's "twist tool," Tecnomatic argues that Mr. Young committed perjury by testifying that Eagle was not sent Tecnomatic drawings. Tecnomatic's argument ignores additional testimony from Mr. Young.

Most significantly, the line of questions on which Tecnomatic focuses related to the spring of 2007. Tecnomatic did not, as it seems to suggest, ask Mr. Young if Remy *ever* sent Eagle copies of Tecnomatic drawings. Even so, Mr. Young testified later in his deposition that Remy asked Tecnomatic for tooling drawings for the purpose of finding another source for producing the tooling. [Dkt. 240 at Ex. A at 96:12-97:5 ("The reason we needed the drawings was to develop alternative sources for the twist tool" and referencing "during 2007, and maybe even summer" as the time period at issue).] Although this testimony is not entirely consistent with emails showing Mr. Young transmitting Tecnomatic drawings to Eagle, it does suggest an intent on the part of Mr. Young to testify truthfully and at best creates a basis for Tecnomatic to attempt to impeach Mr. Young's testimony at trial. Tecnomatic has not provided the proverbial smoking gun to show that Mr. Young testified falsely with the intent to do so. The documents cited by Tecnomatic may suggest Mr. Young' testimony is unclear or confused, but Tecnomatic is far from proving perjury.[5]

---

[5] Tecnomatic's Supplemental Submission is no more compelling. [*See* Dkt. 308.] Dan Hanson's Affidavit, as the President of Eagle, may establish that Tecnomatic documents were sent to

### b. Mr. Perry's Deposition Testimony.

Tecnomatic also argues that Stuart Perry – a former employee of Remy – testified falsely. Mr. Perry testified that he had the *impression* that Eagle was provided copies of the Tecnomatic's drawings for the tooling. [Dkt. 216 at Ex. J at 280:12-13 and 16 ("Q. And was Mark Stephenson providing Eagle with copies of Tecnomatic's tooling? . . . . A. I was of the impression that he was.").] Tecnomatic argues that "[i]t is simply not credible for Perry to claim he did not know of Remy's unlawful conduct when he was directly responsible for compiling Tecnomatic's highly confidential information and equipment for delivery to Eagle." [Dkt. 241-1 at 11.] Credibility is an issue for the jury to determine – it is not synonymous with perjury. *See Montaño*, 535 F.3d at 565 (holding that "inconsistencies of this sort are the prototypical products of 'confusion, mistake, or faulty memory," and that "[t]hese inconsistencies certainly bear on [the witness's] credibility . . . but in the absence of other evidence of a deliberate falsehood do not permit the inference that [the witness] committed perjury"); *Allen*, 317 F.3d at 703 ("Perjury is a circumstance to be weighed by the jury in determining a witness's credibility rather than a ground for removing the issue of credibility from the jury by treating the witness's entire testimony as unworthy of belief.") (citation omitted). Tecnomatic will be given an opportunity to attempt to impeach Mr. Perry and call into question Mr. Perry's credibility to the jury; however, the evidence presented falls short of satisfying the definition of perjury – that Mr. Perry provided false testimony with the willful intent to do so.

Tecnomatic argues that Mr. Perry's statement that he did not have personal knowledge of whether Remy was sending Tecnomatic information and drawings to Eagle is false based on emails produced after Mr. Perry testified. [Dkt. 214-1 at 11.] After careful consideration of Mr.

---

Eagle, but it is not evidence that Mr. Young testified falsely about his personal knowledge that he did not know what was sent to Eagle.

11

Perry's testimony and the emails submitted by Tecnomatic, the Court concludes that the evidence presented does not establish that Mr. Perry testified falsely. Exhibit K is an email where Mr. Perry forwarded drawings to Mark Stephenson, but Mr. Perry is not a party to the email wherein those drawings were forwarded to anyone else. Mr. Perry is not a party to *any* of the emails included in Exhibit L. With respect to Exhibit M, the email deals with the tooling itself, and not drawings, but in any event, the discussion is that Mr. Perry brought the the tool for Mr. Stephenson to take to Eagle – whether Mr. Perry knows that this occurred or not is not contained within Exhibit M. Mr. Perry's testimony that he was "under the impression" that Eagle was provided copies of Tecnomatic's tooling drawings appears accurate and as far as Mr. Perry could testify based on his personal knowledge evidenced in Exhibits K, L, and M. These emails do not show that Mr. Perry intentionally testified falsely.

    **2.    Remy Did Not Deceive Tecnomatic Regarding Its Intent to Withhold Documents from Production in the 2008 Action and Has Produced the Documents at Issue in Response to the Subsequent Discovery Requests.**

Tecnomatic claims that Remy willfully withheld documents proving that Remy sent Eagle and Odawara videos and Tecnomatic's technical drawings, manuals, and software, despite Requests for Production of Documents served in the 2008 action requesting those documents. Tecnomatic argues that documents showing that Remy transmitted Tecnomatic drawings to third parties were relevant in the 2008 action and were requested in discovery served in that case.[6] Although Tecnomatic cites generally to its 2008 action Requests for Production of Documents to

---

[6] Although Tecnomatic argues that the documents at issue were relevant in the 2008 action [*see* Dkt. 246 at 3-7], the Court need not determine the validity of Remy's relevancy objections in ruling on the instant Motion. The documents at issue are now being produced and Tecnomatic never challenged Remy's relevance objections at the time the discovery responses in the 2008 action were received. As a result, this issue is moot because Remy is no longer refusing production on a relevancy objection.

Remy [Dkt. 216 at Ex. A] as evidence of Tecnomatic seeking these documents, none of the 27 Requests for Production of Documents specifically seek the documents that Tecnomatic claims were withheld.  The closest Tecnomatic comes to showing that it requested Tecnomatic drawings sent to third parties is (1) requests for computer files of Remy employees and (2) an Interrogatory that seeks the suppliers of the replacement system and all "facts and documents concerning the information provided to such suppliers." [Dkt. 240-7 at Interrogatory No. 2.][7]  It is undisputed that Remy responded to these requests with a relevancy objection and a clear expression of its position that such documents would not be produced.

For example, Tecnomatic's Interrogatory No. 2 to Remy in the 2008 action sought the identity of the supplier of the replacement system and all facts and documents concerning the information provided to those suppliers.  Remy objected that "'all facts and documents concerning the information provided to such suppliers' is overly broad, not relevant to any party's claim or defense in this action, and improperly seeks discovery in the Illinois Action[8] in contravention of the Federal Rules of Civil Procedure 26(a) and 26(d)." [Dkt. 240-7 at Interrogatory No. 2.]  Tecnomatic was on notice that Remy specifically objected to this discovery request, yet Tecnomatic apparently did nothing to pursue the production of this

---

[7] Tecnomatic's Interrogatory No. 2 to Remy specifically identifies "requests for proposal(s) and/or requests for quote(s) issued and/or received by Remy" as documents to be identified, but does not specifically seek Remy's documents that may have been sent to the supplier of the replacement system.  [Dkt. 240-7 at Interrogatory No. 2.]  Even Tecnomatic describes its discovery requests as "broad enough to encompass documents related to Remy's transmission of Tecnomatic's materials to third parties."  [Dkt. 214-1 at 3.]  Tecnomatic did not specifically request the documents at issue.

[8] The reference to the "Illinois Action" is a reference to Tecnomatic's more recent claims in this matter, which were originally field in Illinois prior to their transfer to this Court.

information and documentation in the 2008 action that nearly proceeded to trial.[9]  Specifically, Tecnomatic did not meet and confer with Remy, and it did not file a motion to compel.

The same is true with regard to the computer files of Remy's employees.  Tecnomatic requested "[a]ll computer files and back up discs kept and maintained by Kevin Young during his employment at Remy."  [Dkt. 216-2 at 4 (Request for Production No. 2); *see also id.* at 3 (Request for Production No. 1) (relating to Stuart Perry).]  Remy responded to this Request solely with objections and no indication that it would be providing any documents (i.e., any of Mr. Young's or Mr. Stuart's computer files) in response.  [*Id.*]  Tecnomatic did not meet and confer regarding these objections or move to compel responses prior to deposing Messrs. Young and Perry.

However, since the consolidation of the 2008 action with Tecnomatic's more recent claims, Remy responded to the same discovery request by objecting, but also stating that "Remy has agreed to gather and apply search terms to all potentially relevant electronically stored information kept and maintained by Mr. Young that is within Remy's possession, custody or control."  [Dkt. 216-2 at 16 (Request for Production No. 2).]  The same is true with respect to the Requests for Production of Documents related to Mr. Perry's computer files.  [Dkt. 216-2 at 16 (Request for Production No. 1).]  Remy then produced documents responsive to these requests in the 2011 action, consistent with its position that these documents were not relevant in the 2008 action, but are relevant to the 2011 action.

> **3.   Even if Remy Committed a Discovery Violation, the Sanction Requested Would Not Be Proportionate to the Gravity of the Alleged Offense.**

---

[9] Remy states in its response brief that Tecnomatic never challenged Remy's objections to the 2008 action discovery requests.  [Dkt. 240 at 11 ("Rather than meeting and conferring with Remy to narrow the scope of the requests, or even moving to compel production of the requests, Tecnomatic did nothing.").]  Remy did not dispute this fact.

Even if Tecnomatic had shown that Remy's witnesses testified falsely or that Remy had willfully withheld responsive documents from production, the sanction requested – dismissal of Remy's claims – would not be proportionate to the gravity of the alleged offense. *See Montaño*, 535 F.3d at 563 ("The sanction imposed should be proportionate to the gravity of the offense.") (citation omitted). Before dismissing the case, the Court must consider the appropriateness of lesser sanctions and explain why those sanctions are insufficient. Here, even had Tecnomatic overcome the first hurdle of proving that Remy knowingly allowed witnesses to perjure themselves and willfully withheld relevant documents from production in the 2008 action, the Court cannot find that other less severe sanctions would not be appropriate in this situation.

Tecnomatic seeks less dramatic sanctions in its conclusion. Specifically, Tecnomatic requests, in the alternative, that the court "requir[e] Remy's witnesses to submit to additional depositions, with costs and attorneys' fees to be borne by Remy." [Dkt. 214-1 at 14.][10] The Court remains unconvinced that a fee-shifting sanction related to further depositions of Messrs. Young and Perry is appropriate; however, these witnesses can be redeposed related to the claims and defenses presently pending in this matter that are different from the claims in the 2008 action, including discovery that was not produced in the 2008 action on the basis of relevancy. If the parties cannot agree to additional depositions of these individuals, Tecnomatic can seek leave of Court to take these depositions pursuant to Fed. R. Civ. P. 30(a)(2)(A)(ii), once its meet and confer obligations have been satisfied. The Court does not find, however, that Tecnomatic

---

[10] Tecnomatic also suggests that the Court could "preclud[e] Remy from asserting any defenses to any of Tecnomatic's claims related to Remy's transfer of Tecnomatic's information to Eagle and Odawara" [Dkt. 214-1 at 14], but this sanction would be tantamount to awarding Tecnomatic a default judgment – similar to a dismissal of Remy's claims – which also would be disproportionate to the alleged misconduct.

would be entitled to its fees or costs to depose these individuals because no discovery violation or abuse of the judicial process has been established.

### III.     Conclusion.

For the above-stated reasons, the Court recommends **DENYING** Tecnomatic's Motion for Sanctions [Dkt. 213].    Federal Rule of Civil Procedure 37(a)(5)(B) requires the Court to hold a hearing and consider the apportionment of attorney's fees and expenses when such a motion is denied, and both parties have requested attorney's fees (or other "appropriate relief"). Accordingly, Remy is ordered to file a petition for such fees and expenses on or before March 11, 2013, which will be addressed as a separate matter.

Date:    02/19/2013

Distribution:
All Electronically Registered Counsel

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana