UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REMY INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TECNOMATIC, S.P.A., ) | |
| ) | |
| Defendant, ) | |
| _____ ) | No. 1:11-cv-00991-SEB-MJD |
| TECNOMATIC, S.P.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| REMY, INC., ) | |
| HANSON SYSTEMS, LLC D/B/A EAGLE ) | |
| TECHNOLOGIES GROUP, ) | |
| ODAWARA AUTOMATION, INC., ) | |
| REMY INTERNATIONAL, INC., ) | |
| DELCO REMY MEXICO, S.R.L. DE C.V., ) | |
| REMY COMPONENTES S. DE R.L. DE ) | |
| C.V., ) | |
| 1-10 DOES, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON TECNOMATIC'S MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS AND COMPLETE ANSWERS TO INTERROGATORIES TO REMY
[DKT. 317]**

This matter is before the Court on Tecnomatic's Motion to Compel the Production of

Documents and Complete Answers to Tecnomatic's Interrogatories to Remy. [Dkt. 317.] The

Court held a hearing on this motion on September 27, 2012, at which the Remy Defendants

("Remy"), Tecnomatic, S.P.A. ("Tecnomatic"), and Odawara Automation, Inc. ("Odawara")

appeared by counsel. The Court, being duly advised, **GRANTS IN PART** and **DENIES IN PART** the Motion to Compel as follows:

### A. Interrogatories

Tecnomatic takes issue with Remy's responses to Remy Inc.'s Answers to Tecnomatic's Interrogatories [Dkt. 318-6], Remy Inc.'s Amended and Supplemental Answers to Tecnomatic's Interrogatories [Dkt. 318-7], and Remy Inc.'s Second Amended and Supplemental Answers to Tecnomatic S.p.A.'s Interrogatories [Dkt. 318-8]. Remy indicated in open court that Remy Inc.'s Second Amended and Supplemental Answers [Dkt. 318-8] are the final response and the previous responses are incorporated into Dkt. 318-8, therefore, the Court will focus its discussion upon this response. [See Dkt. 382 at 6-7.] The interrogatories in question are Interrogatory Nos. 5, 6, and 7.

#### 1. Interrogatory No. 5

With regard to Interrogatory No. 5, Remy first objects on the grounds that subparts (a) through (c) of the interrogatory are overly broad, unduly burdensome, vague, ambiguous, and seek information that is not relevant to a claim or defense in the case. This interrogatory seeks information regarding the "Tecnomatic Production System."

First, Remy's objection that Tecnomatic should have requested the information sought by this interrogatory in the earlier portion of this case is overruled. The Court finds that the information requested is relevant to Tecnomatic's claims in the lawsuit.

The Court limits the time frame for this interrogatory to the period from December 1, 2006 through September 30, 2008. [See Dkt. 382 at 14.] With that limitation, Remy's overbreadth objections as to that time period are overruled. Remy's overbreadth objections as to any other time periods are sustained.

Remy's objections as to the scope of the individuals encompassed by this interrogatory are granted in part and denied in part. Remy's objections are overruled as to any individuals who participated in the conception, design, development, manufacture, operation or maintenance of the equipment at issue. Remy's objections are also overruled as to any individuals who accessed the equipment for the purpose of inspecting, photographing, videotaping, or otherwise examining the equipment. However, to the extent the term "access" encompasses any individual not specifically set forth above, the Court finds that term to be overly broad and Remy's objection in that regard is sustained.

Remy also objects, as unduly burdensome, to Tecnomatic's request in subpart (a) for "a detailed description of the individual's involvement." With the limitation on the time period and relevant individuals set forth herein, Remy's objections to this aspect of Tecnomatic's interrogatory are not well taken and are overruled. Likewise, with the limitations already imposed, Remy's objections to the phrase "and the purpose for providing such access" in subpart (b) are also overruled. Additionally, with the limitations otherwise imposed, Remy's objections to subpart (c) are also overruled; Remy is to identify all individuals and entities who were provided access to the information identified in subpart (c) and indicate the purpose for which each such person or entity was provided such access.

Finally, in light of the limitations set forth above, any other objections asserted by Remy with regard to Interrogatory No. 5 are also overruled and Remy is ordered to provide a complete and unequivocal response thereto.

    **2.    Interrogatory No. 6**

With regard to Interrogatory No. 6, Tecnomatic argues that Remy did not articulate when or why they provided certain information to Eagle. Remy argues that, under Rule 33(d), it

identified by Bates number transmissions of information to Eagle that indicated the date and to whom the materials were sent as well as why the information was provided. The Court finds that, so long as the documents in question were specifically identified by Bates number, the interrogatory response in that regard is sufficient and thus the motion is denied with regard to this issue.

Tecnomatic next takes issue with Remy's response regarding information provided to Eagle in connection with the DCX project. In its response, Remy answered that it "is not aware of any Tecnomatic data, information, or materials that were provided to Eagle in connection with the DCX project." [Dkt. 318-8 at 9.] Tecnomatic argues, however, that there is a discrepancy between this response and the answer regarding the HVH project where Remy definitely answers that it did not provide any Tecnomatic information to Eagle. The Court does not find anything deficient in that portion of the response.

Tecnomatic also expressed concern that Remy's general objections to Interrogatory No. 6 will limit its response. Counsel for Remy represented that the general objections would not limit its response to subparts (a) through (d) and once it has identified people with regard to this interrogatory, it will fully respond. [Dkt. 382 at 49-50]. In light of Remy's representation, Remy's general objections to Interrogatory No. 6 are sustained.

With regard to the transmission of Tecnomatic information to Eagle, Tecnomatic argues that Remy did not identify whether any transmission of information was made verbally. Remy argues that this is more of a subject of inquiry for a deposition. The Court finds that it would be reasonable for Remy to interview the people who transmitted responsive information and inquire into whether any transmissions were made verbally. While a detailed narrative may exceed the burden requirement, Remy must identify which individuals had communications with Eagle and

provide at least a general description of those communications. Tecnomatic's motion to compel is granted with respect to this issue.

Finally, with the understanding that Remy's response must be complete as to all high-voltage hairpin projects involving Remy and Eagle during the relevant time period, the remaining portions of Tecnomatic's motion to compel with regard to this interrogatory are denied.

### 3. Interrogatory No. 7

With regard to Interrogatory No. 7, Tecnomatic argues that Remy did not provide any information with regard to Taggert McGough as an agent of Odawara. Tecnomatic argues that, even if Interrogatory No. 7 is not read to include the agents of Odawara, information regarding Taggert McGough should have been provided in response to Interrogatory No. 5. Remy has agreed to supplement its response to this interrogatory and identify whether Remy communicated with McGough and whether he was provided with information responsive to this interrogatory. [Dkt. 382 at 57.]

Tecnomatic also argues that Remy failed to identify any Remy personnel responsible for sending or communicating the Tecnomatic data or material information to Odawara. Tecnomatic argues that there were emails that show when Remy personnel were copying the disks and at whose instructions the disks were copied and Remy failed to reference any of these documents in response to this interrogatory. Remy responds that at the time of the response, its intent was to provide a full and complete answer, however, it will review and supplement if needed. [Dkt. 382 at 58.] In light of Remy's duty to supplement, Tecnomatic's motion to compel in this regard is denied.

The remaining issues with regard to Interrogatory No. 7 have been addressed in the Court's decision regarding Interrogatory No. 6 and thus the Court incorporates its ruling as to Interrogatory No. 6 as its ruling on Interrogatory No. 7, with all references therein as to "Eagle" changed to references to "Odawara."

**B.      Request for Production**

Tecnomatic moves this Court to compel Remy to fully respond to Tecnomatic's Fourth Request for Production of Documents [Dkt. 318-2].

With regard to request No. 1, Remy first objects on the basis of privilege and work product. Remy acknowledged that any privileged or otherwise protected responsive documents must be listed on a privilege log.

The next objection is on the basis that Tecnomatic seeks confidential information. Remy represents that it is not withholding any documents on the basis of that objection. In any event, given that a protective order is in place, Remy's confidentiality objection is overruled.

The next objection is on the basis that the request is vague and ambiguous because Remy has not seen Tecnomatic's FOIA request. The Court orders Tecnomatic to provide Remy with a copy of the FOIA request. Once Remy receives a copy of Tecnomatic's FOIA request, this objection is overruled.

Remy also objects to producing all communications with the Department of Energy ("DOE") on the basis of relevance. Tecnomatic argues that the communications are relevant because the DOE documentation relates to the use of Tecnomatic equipment and the grant funds relate to the quantification of gains and unjust enrichment and restitution. Remy responds that the grant funds from the DOE should not be considered as a measure of damages for unjust enrichment or gain. Remy further argues that Tecnomatic has not asserted an unjust enrichment

6

claim against Remy and is seeking the Court's permission to add one in. The parties reference authority on the issue of damages and the quantification of gain including *Weston v. Buckley*, 677 N.E.2d 1089 (Ind. Ct. App. 1997), and *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82 (2nd Cir. 1991). Tecnomatic filed supplemental authority for the Court to review with regard to damages. [Dkt. 375.] Remy did not file supplemental authority.

On the issue of relevance, the Court notes that it is generally a low threshold. Some documents relating to the DOE grant have already been produced. The Court finds that Tecnomatic has satisfied its burden of demonstrating the potential relevance of the documents relating to the DOE grant. Therefore, Remy's relevance objection to this request is overruled and Tecnomatic's motion to compel is granted with regard thereto.

With regard to Request No. 2, the issues are substantially similar to that in Request No. 1; therefore the Court incorporates by reference its ruling regarding Request No. 1 as its order as to Request No. 2.

Remy objects to Request No. 3 on the basis that is vague, ambiguous, overly broad, and unduly burdensome. Remy also objects on the basis of relevance, which is substantially similar to its argument with regard to Request No. 1; therefore, the same ruling shall apply for Request No. 3 with regard to relevance. With the exception that Remy may log any responsive documetns it claims to be privileged or otherwise protected from disclosure, the Court finds that Remy's remaining objections to Request No. 3 are not well taken and should be overruled. Tecnomatic's motion to compel with regard to this Request is granted.

Request Nos. 4 and 5 are similar in argument to Request No. 3 with regard to the valuation of Remy's business operation. Therefore, the Court incorporates by reference its ruling as to Request No. 3 as its order with regard to Request Nos. 4 and 5.

Request No. 6 is more limited; the scope is only related to the valuations with respect to the EP8 Stator project. As stated in its response and in open court, Remy has agreed to provide the responsive documents relating to any valuations conducted with regard to Remy's business operations in connection with the EP8 stator project. [Dkt. 318-2 at 7-8; Dkt. 382 at 81.] Accordingly, Tecnomatic's motion to compel in that regard is denied as moot.

Request No. 7 is limited to valuations of Remy's business operations with regard to the HVH project. However, Remy asserts the same arguments as set forth with regard to Request Nos. 3, 4 and 5. The Court incorporates by reference its ruling as to Request No. 3 as its order with regard to Request No. 7.

With regard to Request Nos. 8 through 14, 27 and 28, the Court sustains Remy's overbreadth objections and denies Tecnomatic's motion to compel, because those requests seek the production of documents far beyond anything Tecnomatic may argue to be reasonably related to the claims or defenses in this case.

Request Nos. 15 and 16 request documents relating to a joint venture with Tecnomatic. Remy has agreed to produce the responsive documents or log those that are privileged or otherwise protected, subject to the search protocol to be approved by the Court. Accordingly, Tecnomatic's motion to compel in this regard is denied as moot.

In Request No. 37, Remy objects on the basis that the term "HVH stator technology" is vague and ambiguous as it is not a defined term. Tecnomatic clarified on the record that that terminology refers to "the stators and the technology used for the stators in the HVH line of motors." [Dkt. 382 at 87-88.] Given that clarification, Remy's objections that the request is vague and ambiguous are overruled.

Remy further objects on the basis of relevance, again requesting clarification on what the claims are. Remy argues that Tecnomatic does not have a stator design trade secret claim and thus should not be entitled to every document on the HVH stators, as Tecnomatic requests. Remy argues that it should be limited to producing information regarding the use of Tecnomatic information on the HVH project. Tecnomatic argues that the need for all documents relating to the HVH stators is relevant to the claims they have asserted and to Remy's defense. Tecnomatic also argues that it designed portions of the stators including phase lead, jumpers, and neutrals. Remy has offered to allow Tecnomatic to inspect the HVH stator. Tecnomatic argues that it needs the documents related to the design and development of the stator, such as drawings, in order to examine it. The Court finds that Tecnomatic has demonstrated the possible relevance of the information sought by this request to a claim or defense in this lawsuit. Accordingly, Remy's remaining objections to this request are overruled and, subject to Remy's right to log any privileged or otherwise protected documents, Remy shall provide a complete response to this request.

With regard to Request Nos. 38, 39 and 40, the Court finds the requests to be overly broad to the extent they seek the production of documents outside the scope of Request No. 37. Accordingly, Tecnomatic's motion to compel with regard to those requests is denied.

With regard to Request No. 43, the Court finds the request to be overly broad. The terms "strategic alliance" and "collaborative relationship" are so broad as to encompass virtually any aspect of Remy's business that might relate to HVH stator technology, which is well beyond the reasonable scope of discovery in this matter. Accordingly, Tecnomatic's motion to compel with regard to this request is denied.

With regard to Request No. 42, Remy had an issue with the term "stator technology." Remy now agrees that producing documents relating to revenue generated on the HVH projects would be proper: there are three such projects at issue: EP8, DCX, and HVH. Remy asserts that it has produced much of that information and intends to supplement for the EP8 project. [Dkt. 382 100-02.] Accordingly, Remy's objections are overruled and Tecnomatic's motion to compel is granted as to this request.

Tecnomatic also moves to compel Remy to produce documents relating to certain document custodians. The parties have produced a list of agreed custodians [Dkt. 339-1 at 8-9 (including Rick Trammell)] and a list of additional custodians for which Tecnomatic requests document production [Dkt. 318-1 at 11-13]. With regard to the agreed custodians, Remy represents that the documents have been collected for all of the agreed custodians and the documents have been searched for the agreed search terms, with the exception of Rick Trammell, whose documents had not yet been produced. [Dkt. 382 at 103-09.]

With regard to the additional custodians, the parties agreed that Brian Richardson, Bryan Hershberger, Dane Carter, Alex Creviston, and Ted Garcia from Tecnomatic's additional custodian list are already on the agreed list. [Dkt. 382 at 110, 115; compare to Dkt. 339-1 at 8-9.] The Court does not find Ted Garcia on the agreed list, but based upon Remy's representation, finds that Remy has agreed to collect and search Mr. Garcia's documents. The parties further agreed that "Elenco Ricambi" is not a person, but means "spare parts" in Italian. [Dkt. 382 at 111, 115.] Remy also agreed to add software engineers Rogelio Santoyo, Javier Patino, and Norma Orta as agreed custodians. [Dkt. 382 at 114.]

As for the remaining individuals, Remy's position is that, if Tecnomatic wants Remy to gather and search the documents of additional custodians, then Tecnomatic should be required to

pay the costs related to that effort. Tecnomatic argues that cost shifting is not appropriate under the Federal Rules because Tecnomatic has identified how the individuals are relevant to the issues and defenses in this matter. Tecnomatic further argues that, even if relevance is not determinative of whether cost-shifting is appropriate, Remy has not provided sufficient information upon which the Court could base a cost-shifting analysis. The Court disagrees. The Court has been required to have extensive involvement in the discovery process to date and is well aware of the efforts undertaken by the parties. Additionally, the Court finds that Remy has provided a sufficient analytical basis for the Court to institute a burden shifting protocol in this matter. To that end, the Court finds as follows:

    a. That the following individuals from Tecnomatic's list of additional custodians should be added to the list of agreed custodians: Mike Laisure, Darrell Stephens, Mike Bradfield and John Noll;

    b. That Remy is not, at this juncture, entitled to recover the cost of gathering documents from the agreed custodians;

    c. That Tecnomatic may request that Remy gather documents from any of the remaining custodians specifically identified by Tecnomatic [see Dkt. 318-1 at 11-13] (hereinafter, the Non-Agreed Custodians) whose documents Tecnomatic wishes to be searched; however, Tecnomatic must agree in advance to reimburse Remy for 80% of the vendor costs incurred in collecting and processing the documents of any of the Non-Agreed Custodians. At Tecnomatic's request, Remy shall provide a good faith estimate of the costs for collecting and processing the documents of such custodians before Tecnomatic must decide to proceed.

With regard to search terms, Tecnomatic requested additional terms for Remy to search in order to locate and produce documents. The parties have agreed to certain terms identified in Exhibit X (shaded grey); however, there are terms in Exhibit X that have not been agreed upon. [Dkt. 419-1.] Remy argues, however, that those terms proposed by Tecnomatic produced a high volume of nonresponsive documents. In Exhibit Y, Remy has proposed to combine some of the disputed terms in Exhibit X with other terms to produce responsive documents. [Dkt. 419-2.] These modified search terms are numbers 08_R_062 through 065, 069, 073, 074, 081, 082, 083, and 086 through 090 of Exhibit Y. [*Id.*]

In Exhibit X, Remy objected to search numbers 04_R_041 through 052 and 053 through 061 because they were just names of people and Remy argues that they should not be run as search terms. Tecnomatic argues that these are names that appeared in the documents that Remy produced that are involved in either EP8, DCX, or HVH or the Department of Energy projects. Tecnomatic further argues that these names are not on the agreed custodians list, with the exception of Trammell who has since been agreed to, and Tecnomatic believes that the individuals were involved in the disputed projects or had access to the information.

Remy produced a spreadsheet that it asserts "tests" whether the disputed terms are relevant or not. [Dkt. 382 at 122; Dkt. 339-1 at 16-17.] Remy asserts that it ran all the search terms, both agreed and disputed against five agreed upon custodians (Stephenson, Young, Van Sickle, Oaf, and Perry) which produced a total number of hits of responsive/nonresponsive documents. Remy argues that the name search terms produced an extremely high percentage of nonresponsive documents. [Dkt. 339-1 at 16.] With regard to the search term "drawing*," number 62, Tecnomatic withdraws this terms as it stands alone. [Dkt. 382-124.] With regard to the search term "photo*" or "video*," number 63, Tecnomatic argues that these terms, when

12

applied on the proper custodians will produce relevant information. Remy argues that based on the spreadsheet, those terms hit almost 100,000 documents and the nonresponsive rate was 96%. There is also an issue with the search terms for the Department of Energy, numbers 67 and 68 based on the arguments outlined with respect thereto above. With regard to the term "lease," number 73, Tecnomatic argues that if run against the right custodians, this term should produce documents that are related to the lease issue in the case. The parties agreed that the relevant time limitation for this term should be from October, 2005 to May, 2008. [Dkt. 382 at 128-129.] Tecnomatic asserts that "lease" should be run against the following people on the agreed custodian list: Brenda Alford, Monica Bolt, Dennis Bouie, Stan Clark, Joani Kirby, Ingram Liljestrand, Carol Mineart, Mike Morrison, David Muir, Terry Oaf, Stuart Perry, Jay Pittas, Jeremiah Shives, Mark Stevenson, Rich Van Sickle, Jon Weber, Bob Ponsler, Bryan Hershberger, Dane Carter, and John Noll. Tecnomatic also asserts that "lease" should be run against the following disputed custodians: Craig Hart and John Fitzenberger. Remy represents that, with regard to Stephenson, Young, Van Sickle, Oaf, and Perry, it produced all responsive documents with regard to the agreed and nonagreed search terms. [Dkt. 382 at 131.]

     All of these detailed arguments may have a glimmer of merit. Some more than others. Were the parties actually cooperating in the conduct of discovery in this matter as contemplated by the federal rules, the Court is confident any issues regarding what terms should be used to search which custodian could be easily resolved. The Court has recommended several techniques to facilitate such cooperation -- such as sharing the number of search hits a particular term produces and modifying searches that produce an inordinate number of responses – all to little or no avail.

The fact is that the parties and their counsel have developed such a deep distrust of one another that the normal process of discovery has broken down. Such breakdown is further evidenced by the fact that multiple parties in this matter have moved to compel what is claimed to be an incomplete production of documents based, not on actual evidence of incompleteness, but upon a mere supposition that there must be more.  In the face of the parties' failure to conduct discovery without significant Court involvement, as the discovery process is meant to proceed, the Court must act to ensure the continued forward movement of this case toward resolution. Accordingly, the Court rules as follows:

    a. The Agreed Search Terms shall encompass the grey shaded terms in Ex. X as well as the additional terms from Ex. Y that Remy proposed to search, which are search numbers 08_R_062 through 065, 069, 073, 074, 081, 082, 083, and 086 through 090 of Exhibit Y. [Dkt. 419-1 & 419-2.]

    b. Within fourteen days of the date of this Order, the parties shall file any additional proposed terms intended to gather DOE documents or any other subject documents Remy is to produce pursuant to this Order. Agreed terms are preferred, but if non-agreed terms are submitted, the Court will determine the final additional terms to be searched for this purpose. These terms shall also be added to the list of Agreed Search Terms.

    c. Remy shall search the set of agreed custodians for the Agreed Search Terms and produce responsive documents at Remy's expense.

    d. Tecnomatic may request that the documents of Non-Agreed Custodians be searched for Agreed Search Terms; however, Tecnomatic must agree in advance to reimburse Remy for 80% of the vendor costs incurred to process the search and produce any

responsive documents. At Tecnomatic's request, Remy shall provide a good faith estimate of the costs for searching and producing the documents of such custodians before Tecnomatic must decide to proceed.

e. Tecnomatic may also request that the documents of either agreed custodians or Non-Agreed Custodians be searched for search terms that have not been agreed; however Tecnomatic must agree in advance to reimburse Remy for 80% of the vendor costs incurred to process the search and produce any responsive documents. At Tecnomatic's request, Remy shall provide a good faith estimate of the costs for searching and producing the documents of such custodians before Tecnomatic must decide to proceed. If Tecnomatic makes such a request, Remy may seek relief on a request-by-request and/or custodian-by-custodian basis upon a particularized showing of undue burden.

f. This Order does not shift any burden for any costs for attorney review incurred by Remy. Remy may produce any documents responsive to a search term without review and Tecnomatic may not object to such production as having provided irrelevant documents. A claw back provision is in place and the Court will entertain requests for the entry of quick peek or other orders intended for the protection of Remy's privileged or otherwise protected documents as a means to minimize Remy's further costs of production in this matter.

For the aforementioned reasons, Tecnomatic's Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**.

Date: _03/27/2013_

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

15

Distribution:

All Electronically Registered Counsel